THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
MELVIN REMBERT, Defendant-Appellee.

First District (1st Division)    No. 79-821

Opinion filed September 29, 1980.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Terrence M. Burns, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Timothy K. McMorrow, Assistant Public Defender, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

The State has appealed from an order granting the motions of Melvin Rembert (defendant) to quash his arrest and suppress physical evidence, oral statements and a lineup identification. Ill. Rev. Stat. 1979, ch. 110A, par. 604 (a) (1).

Defendant was charged in an information with armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2), burglary (par. 19—1) and armed violence (par. 33A—2). On February 7, 1979, defendant filed three written motions to quash his arrest and suppress evidence, to suppress defendant's statements and to suppress lineup identification testimony. This evidence was heard:

Joseph Mirus, an investigator for the Chicago Police Department, testified that on July 11, 1978, at 3:30 p.m., he received a telephone call from a man who identified himself as "Louisiana Slim." Mirus did not know Louisiana Slim personally but he had spoken with him by telephone on one previous occasion. Lousiana Slim told Mirus he had information about a robbery at the Mark Twain Hotel. This robbery had in fact occurred at 7 o'clock on the previous night. The informant also stated one of the robbers was in police custody and the other "taller" robber was now in apartment 406 at 1166 North Dearborn. Louisiana Slim said he did not want to come to the police station and did not ask to be paid for this information. Mirus told Sergeant Finnin about this conversation.

Sergeant Finnin testified he had been assigned to the investigation of the robbery. At the time he spoke to Investigator Mirus, one of the two suspects was in custody. A lineup had been set for 6 p.m. that day. A description of the second suspect was contained in the police report. Finnin discussed the case with Investigator Winkie. Finnin showed Winkie the report and gave him the description of the second offender from the report. The description was of a male Negro, 25 years old, 6 feet 1 inch in height, 180 pounds. Items taken in the robbery were some rings, a gold Seiko watch and $200.

Finnin and Winkie then went to 1166 North Dearborn. They had no warrant. Finnin stated he had been in this building on a previous occasion and he knew there were no fire escapes from the individual apartments. The officers proceeded immediately to appartment 406. Winkie heard noises in the apartment. The officers knocked on the door, announced their office and asked to speak to the occupants. There was no response. The officers continued to knock on the door for 15 minutes. There was still no response. Finnin stayed at the door of the apartment while Winkie went to get the janitor. Winkie returned 10 to 15 minutes later with the janitor, who had a pass key.

The janitor told the officers he did not know who lived in the apartment. When the officers asked him if a male Negro over 6 feet tall and 170 to 180 pounds lived there, the janitor "said he thought so." Finnin and the janitor could not open the door to the apartment with the pass key. Finnin continued intermittent knocks on the door. Winkie looked through a crack between the wall and "small icebox door just off the floor." He could see the interior of the apartment through the crack. After being outside the door for 45 minutes, Winkie saw a male Negro, about 25, approximately 6 feet tall, run across the apartment. Winkie yelled, "I see the guy in there. He is in there."

Finnin sent the janitor to call the police station for assistance and then he kicked the door in. Finnin and Winkie entered the apartment with guns drawn. Finnin apprehended two people in the apartment and Winkie arrested defendant. The officers, with assistance from two other policemen who responded to the janitor's call, searched and handcuffed the three occupants. Finnin questioned these people but did not search the apartment. He did not observe "in view" any articles taken in the Mark Twain robbery.

Winkie testified he searched the apartment but did not go into any drawers. He observed on top of a drawer and seized a watch which matched the description of the stolen Seiko watch.

Investigator Robert Royce testified he was assigned to investigate the robbery at the Mark Twain Hotel shortly after it happened on July 10, 1978. Royce interviewed the victim of the robbery. She provided the description of her assailants which was later available to Officer Finnin and Investigator Winkie. The next day at 4:30 p.m., July 11, 1978, Royce saw defendant at headquarters when Finnin and Winkie brought him into the station. At 7:45 p.m., Royce conducted a lineup which the victim and another woman observed separately. Royce did not show a picture of defendant to these witnesses prior to the lineup. He did not tell the women the robber was in the lineup.

Royce then spoke to defendant in a room at the police station. Defendant was handcuffed pursuant to police procedure. Royce first advised defendant of his *Miranda* rights. Defendant stated he understood his rights. Royce informed defendant he had been identified in the lineup and asked him if he had anything to say about the robbery. The conversation lasted 25 minutes, during which time defendant made a statement to Royce.

Rebecca Jane Davidson, an assistant State's Attorney, testified she interviewed defendant in the presence of Investigator Ralph Sikorski at 8 o'clock that evening. She introduced herself, informed defendant who she was and that she worked with the police. She advised defendant of his

rights, which defendant stated he understood. Subsequently defendant made a statement to her. These statements made by defendant are not in the evidence before us.

Evidence on all motions was heard on February 7, 1979. Argument of counsel was heard on February 8, 1979. On February 9, the trial court stated he would grant defendant's motion to quash the arrest and suppress evidence seized from the apartment. The judge stated he was denying the motions to suppress the lineup identification and the oral statements by defendant because the lineup was not suggestive and the statements were voluntarily made. However, after further argument, the trial judge stated he would "reserve ruling" on the identification and the statements.

On February 13, 1979, the trial judge held the lineup identification and the statements were suppressed as the product of the illegal arrest. The trial judge expressly excluded any incourt identification from this ruling. On March 14, 1979, the State filed its notice of appeal. The notice of appeal designated February 9, 1979, and February 13, 1979, as the dates of the orders appealed from.

Defendant first raises the issue of our jurisdiction. He argues the "thrust" of the State's appeal concerns only the order quashing the arrest and suppressing the physical evidence. Defendant contends this order was final and appealable on February 9, 1979, 33 days before the filing of the notice of appeal and thus, the State is precluded from pursuing this appeal. Ill. Rev. Stat. 1979, ch. 110A, par. 606(b).

We disagree. In the context of the record before us, we do not believe the trial court's order of February 9, 1979, was final and appealable. Recently, we decided *People v. Jackson* (1979), 77 Ill. App. 3d 117, 395 N.E.2d 976, in which defendant raised an identical challenge to the State's right to appeal. In *Jackson*, the defendant made an oral motion to quash his arrest and suppress physical evidence and statements made after his arrest. At the close of the suppression hearing on April 3, 1978, the trial court granted defendant's motion to suppress the physical evidence and continued the matter to consider the motion to suppress statements. On June 2, 1978, the trial court granted the motion to suppress statements based on the illegality of defendant's arrest. The State's notice of appeal was filed on June 30, 1978. As in the case before us, defendant Jackson contended the State failed to file a timely notice of appeal regarding the trial court's initial order of April 3, 1978, quashing defendant's arrest and suppressing the physical evidence. We held (77 Ill. App. 3d 117, 120-21):

"The record shows that defendant was charged by separate informations with unlawful use of weapons and the impersonation of a government official. In our opinion, the evidence sought to be suppressed by defendant at the June 2, 1978, hearing was a continuation of the matter presented at the hearing on April 3, 1978.

Both hearings combined sought to suppress all of the evidence that arose from a single prosecution of these offenses. [Citation.] The court at the initial hearing on April 3, 1978, merely entered an order suppressing the physical evidence that defendant sought to have excluded. As noted at the close of the suppression hearing on April 3, 1978, the trial court merely granted defendant's motion to suppress the physical evidence. The matter was continued by agreement to consider the admissibility of any statements made by defendant. * * *.

Thereafter, on June 2, 1978, the court heard arguments of counsel and concluded that the statements allegedly made by defendant were not admissible since they emanated from an illegal stop. We believe that an appeal could not have been taken by the State after the order of April 3, 1978, which suppressed the weapon. That order was not a final appealable order within the context of the entire pretrial matter raised by defendant. To require the State immediately to appeal the initial and partial suppression order would have resulted in unnecessary piecemeal litigation.

* * * Therefore, it is our conclusion that the State filed both a timely and proper notice of appeal after the trial court made a complete determination of defendant's suppression motion."

■■ Our supreme court also has stated the pertinent practice rules are "aimed at discouraging piecemeal appeals * * * ." (*In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 407, 403 N.E.2d 1036.) In that instant case, we reach the same conclusion as in *Jackson*. While the trial court here did not enter an order on February 9 sustaining the motion to quash the arrest and suppress physical evidence, this order, as the April 3, 1978, order in *Jackson*, "was not a final appealable order within the context of the entire pretrial matter raised by defendant." In the instant case, it was not until February 13 that the trial court made a complete, final and appealable determination of the entire suppression matter. Thus, the notice of appeal was timely filed on March 14, 1979.

■■ As regards the propriety of the trial court's orders quashing the arrest and suppressing evidence, we are required to affirm the conclusions of the trial court unless we can find them to be "manifestly erroneous." (*People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, *cert. denied* (1974), 419 U.S. 1026, 42 L. Ed.2d 302, 95 S.Ct. 506; *People v. Clay* (1973), 55 Ill. 2d 501, 505, 304 N.E.2d 280.) The State contends the orders of the trial court are manifestly erroneous because the officers who arrested defendant had probable cause for the arrest and these officers also had authority forcibly to enter defendant's apartment to make the arrest. In our opinion, even assuming probable cause existed for the arrest, we believe the officers had no authority forcibly to enter defendant's apart-

ment without a warrant. Actually the central issue here is the legal propriety of the admitted forcible entry into a home or dwelling place without a warrant. The issue of probable cause is secondary and, as will be shown, should receive consideration only in examining the problem of the existence of exigent circumstances to justify the entry.

In *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S.Ct. 1371, the United States Supreme Court held "the warrantless, nonexigent entry of a private residence, for the purpose of effectuating a felony arrest, is unconstitutional." *(People v. Abney* (1980), 81 Ill. 2d 159, 162, 407 N.E.2d 543.) In *Payton*, the Supreme Court did not indicate the precise circumstances which could be defined as "exigent" and would thus justify a warrantless arrest of a suspect in his private dwelling. *Payton* turned upon the constitutionality of a New York statute. However, shortly after *Payton*, the Illinois Supreme Court faced this issue in *People v. Abney*.

In *Abney*, a beating victim told an investigatory police officer he had been struck by the defendant near defendant's home with an iron bar and a .9 millimeter pistol. The victim gave this information to the officer at the hospital immediately after the alleged beating. He also told the police the defendant's address and stated defendant had walked home after the beating. Two officers went to defendant's residence. They arrived at 6:30 p.m., 1½ hours after the beating. They knocked on the door and announced their office. The door swung open and they entered the premises. A .9-millimeter bullet was seen "in plain view" on the couch. Defendant was subsequently arrested and filed a motion to suppress the bullet as evidence. The trial court allowed the motion and suppressed the evidence. The appellate court affirmed. *(People v. Abney* (1978), 58 Ill. App. 3d 54, 373 N.E.2d 861.) The supreme court reversed the appellate court, with two justices dissenting. *People v. Abney* (1980) 81 Ill. 2d 159, 407 N.E.2d 543.

The supreme court first noted that *Payton* holds, "[A] warrant is required to support a nonexigent entry into a private residence for the purpose of effecting a felony arrest." (81 Ill. 2d 159, 166.) The supreme court therefore considered whether the record in *Abney* presented the necessary exigent circumstances to justify the entry. A majority of the court concluded sufficient exigency did exist to justify the warrantless entry for these reasons:

(1) The entry was made only 1½ hours after the beating of the victim and thus fell "within the spirit * * * of the 'hot pursuit' exception." (81 Ill. 2d 159, 169.) Thus, the officers reasonably believed there was an emergency.

(2) "[T]here was no deliberate or unjustified delay by the officers during which time a warrant could have been obtained." 81 Ill. 2d 159, 170.

(3) "Finally, the need for prompt action was further made apparent by the belief that the suspect was armed and exhibited some sign of a violent character." 81 Ill. 2d 159, 171.

(4) The supreme court found "a clear showing of probable cause." 81 Ill. 2d 159, 171.

(5) The record showed clear identification of the defendant by the victim and strong reason to believe defendant was on the premises. 81 Ill. 2d 159, 172.

(6) Finally, the police entered the residence peacefully through an open door.

A statement of these factors considered by the supreme court as a sufficient demonstration of exigency serves strongly and immediately to demonstrate the lack of exigency in the case before us. Officers Winkie and Finnin did go to defendant's apartment soon after receiving the tip from Louisiana Slim. However, the robbery which defendant was suspected of perpetrating occurred the night before, not a few hours before as in *Abney*. When the officers arrived at the door of the apartment on the fourth floor, they heard noises and 45 minutes later, Winkie looked through a crack in the wall and observed a person who matched the description of the robber. In those 45 minutes, while the police were knocking intermittently, defendant did not attempt to escape. In fact, the officers knew there was no fire escape at defendant's apartment window and there was no realistic method by which defendant could possibly escape from the apartment. "[I]t is difficult to conclude that [defendant] would have escaped during the delay occasioned by the procurement of a warrant." (*People v. Sanders* (1978), 59 Ill. App. 3d 6, 10, 374 N.E.2d 1315, *appeal denied* (1978), 71 Ill. 2d 600.) At no time did the officers make any effort to procure a warrant.

Furthermore, while the offense charged was a violent one, there was no evidence indicating defendant was armed. The information charges defendant committed the offense of armed violence with a screwdriver. Winkie did not see defendant with a gun or other weapon as he looked through the crack in the wall.

■■ The other factors noted by the *Abney* court also militate against a finding that exigent circumstances existed here. While we have assumed, for the purpose of this opinion, that probable cause existed for the arrest, the quality of the information supplied to the police here was not as high as the quality of the information in *Abney*. There, the victim of the crime gave the officers the exact identity and address of the defendant. Here, police received an anonymous call indicating where a suspect in the robbery could be found. The only description given by Louisiana Slim of the suspect was that he was the "taller" robber. There was no indication of how this information was acquired. While this information could arguably

be sufficient as a basis for probable cause once substantiated by corroborating facts, it is not as clear or strong a showing of probable cause as in *Abney*. See 81 Ill. 2d 159, 171-72.

Finally, and most important, the officers forcibly entered the apartment with their guns drawn. This fact alone clearly distinguishes this case from *Abney* and *People v. Bean* (1979), 73 Ill. App. 3d 918, 392 N.E.2d 650, *appeal allowed* (1980), 81 Ill. 2d 584, upon which the State relies. There, police were invited into defendant's residence by his mother.

■■ In short, we agree with the able and diligent trial judge that the record fails to demonstrate the existence of exigent circumstances to justify the warrantless entry.

For these reasons, the orders of the trial court quashing the arrest and suppressing the physical evidence, suppressing the lineup identification, and suppressing the oral statements of defendant as products of the illegal arrest are affirmed. We note here again that any possible in-court identification is not affected by this opinion. Accordingly, upon affirmance, this cause is remanded for further proceedings.

Orders affirmed; cause remanded for further proceedings.

McGLOON and CAMPBELL, JJ., concur.