THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DANNY SMITH, Defendant-Appellee.

First District (5th Division)   No. 1—90—2546

Opinion filed July 10, 1992.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, and Carrie Weiner, Assistant State's Attorneys, of counsel), for the People.

Raymond D. Pijon, of Chicago, for appellee.

JUSTICE LORENZ delivered the opinion of the court:
The State appeals under Supreme Court Rule 604(a)(1) (134 Ill. 2d R. 604(a)(1)), from two rulings of the trial judge quashing the ar-

rest of defendant, Danny Smith, and suppressing the lineup and in-court identifications of him. We consider: (1) whether this court has jurisdiction when the State filed its notice of appeal more than 30 days after the judge found that there was no probable cause for defendant's arrest and suppressed the lineup and in-court identifications of him and (2) whether it was manifestly erroneous for the trial judge to rule that (a) the police did not have probable cause to arrest defendant; (b) the lineup identifications of defendant were not attenuated from his illegal arrest; and (c) the in-court identifications did not have an independent basis. For the following reasons, we affirm.

Defendant was arrested and charged with armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)). Three witnesses to different armed robberies identified defendant in lineups. Prior to trial, he moved to quash his arrest and suppress the lineup and in-court identifications of him. During a hearing, the following testimony was presented.

Antonio Robinson testified that on July 18, 1988, at about 3 or 4 p.m., he was in defendant's home with defendant, Diane Todd, Glodine Jordan, and two children. They were in the kitchen when Robinson saw two unmarked police cars pull up in the alley. At that time, Jordan left the kitchen to answer a knock at the front door. Without being invited in and without consent, four officers in plain clothes entered the kitchen and handcuffed defendant. Robinson asked some questions and one of the officers pointed his finger in Robinson's face, said "you look familiar," and handcuffed him. Four or five other officers entered the house through the front door with their guns drawn. The officers never showed an arrest or search warrant, but they searched the house and Todd's car. The officers took defendant and Robinson to the police station and told them they were being taken because of a car accident. A couple of hours later, Robinson was placed in 9 or 10 lineups and eventually released without being charged.

Glodine Jordan testified that she answered the knock at the front door. Two officers in plain clothes, who did not identify themselves, asked her about defendant. Jordan did not speak to them. Although she did not invite them in, she opened the door for them and they followed her inside.

Diane Todd, defendant's fiancee, testified that the officers searched the house without a warrant and without permission. When an officer wanted to search the basement where Todd kept

her dog, he said to her, "Get the damned dog out of the basement or I'll kill the mother." They also searched her car.

Detective Michael McDermott testified that on July 8, 1988, he interviewed Maurice Smith while he was under arrest for committing an armed robbery and suspected of committing several others. Smith said that he learned his trade from defendant, his uncle, who had committed numerous armed robberies in the Chicago area. He also stated that defendant had been convicted of armed robbery in the past. Smith said defendant lived with Todd and gave McDermott Todd's address. Smith also identified Theodore Brunson as defendant's "close associate" who may have committed robberies with defendant. Smith never provided information to the police before and he subsequently pled guilty to eight or nine robberies. McDermott did a background check on defendant which showed two felony convictions for armed robbery.

McDermott also interviewed Brunson on July 8, who stated that he believed defendant committed numerous armed robberies but he knew of only one specifically. Brunson told McDermott that on May 28, 1988, he drove defendant to a pet store near 103rd and Longwood Avenue and when defendant returned, he said he just "stuck up the place" and showed Brunson a handgun and money. Brunson claimed he did not know defendant would rob the store. Brunson described defendant as a black male, dark complexion, 6 feet 3 inches tall, and in his thirties.

McDermott found a case report of an armed robbery at a pet store on May 28, 1988, at that location. In the report, the victim described the offender as a black male, in his thirties, 5 feet 9 inches tall, 150 pounds, short black hair, and a mustache.

McDermott testified that he first went to an address listed in defendant's parole information but no one was home. At about 6:15 p.m., on July 18, 1988, McDermott and four other officers went to Todd's house to verify defendant's address and arrest him if he was there. While two officers were at the back of the house, McDermott and Detective George Basile knocked at the front door. They identified themselves for the woman who answered the door and asked whether defendant was there. The woman stated that defendant was not there and that he came by "on and off." She opened the screen door and invited them inside. Within a few seconds, the two officers who were stationed at the back of the house entered the kitchen with defendant, who was handcuffed. Robinson, who was drunk, was arrested because he was interfering. The officers did not search the house or the car and took defendant and Robinson to

the police station. During the next three to four hours, they were placed in several lineups.

Detective Michael Cummings testified that he went with McDermott and three other officers to Todd's house to verify defendant's address which was necessary for an arrest warrant. Cummings and Detective James Boylan went to the back of the house. As they approached the back door, defendant, who was not wearing shoes or a shirt, ran out of the house. They arrested and handcuffed him and brought him inside the house to put clothes on. Robinson was arrested because he was interfering with the police. Cummings testified that the officers did not search the house or the car.

In defendant's arrest report, he was described as a black man, 34 years old, 6 feet tall, 180 pounds, black hair, brown eyes, dark complexion, and not wearing glasses. It also stated that defendant was arrested at 6:15 p.m.

On March 23, 1990, the trial judge found that the officers did not have probable cause to arrest defendant and suppressed the lineup identifications of him. The judge rejected the officers' testimony that they went to Todd's house only to verify defendant's address and found that defendant was arrested as a pretext for a lineup identification. The judge set another hearing on the issue of whether the State could prove by clear and convincing evidence that the in-court identifications of defendant had an independent basis from the illegal lineups.

At the next hearing, the State presented the testimony of Elvin Anderson, the manager of a shoe store, who testified that on May 17, 1988, two men came in the store with guns and one of them demanded money. That man was black, 6 feet 5 inches tall or taller, and weighed 175 to 180 pounds. Anderson observed the man for 10 minutes. On cross-examination, Anderson testified that the man was 6 feet or 6 feet 1 inch tall and was between 25 to 30 years old. He also testified that on the day of the robbery, he described the man to the police as 6 feet tall, with a mustache, and he denied telling the police that the man was only 5 feet 8 inches tall. Anderson identified defendant in a lineup. An officer told him that he was correct, that defendant was responsible for other robberies, and that other people also identified him.

Officer Suzanne Urpon testified that after the robbery, Anderson described one of the men as 5 feet 8 inches tall, 25 to 30 years old, and 200 pounds and described the other man as 6 feet 1 inch tall, 185 pounds, and 20 to 25 years old. It was not clear from Ur-

pon's testimony which description was of the man that demanded the money.

Lucy Hudson, a witness to a shoe store robbery on May 28, 1988, testified that the man who robbed the store was black, in his early thirties, 6 feet 2 inches or 6 feet 3 inches tall, and weighed between 175 to 180 pounds. She also said that the man was neatly dressed, well groomed, and wearing blue-tinted glasses. She observed the man for three or four minutes as she was standing next to him. Defendant was the only neatly dressed, well-groomed man in the lineup. Hudson identified defendant in the lineup and the officers told her that another couple identified the same man for a different armed robbery.

Carolyn Gleaves was an employee of a pet store that was robbed on May 28, 1988. She described the man who robbed the store as in his early thirties, 5 feet 6 inches or 5 feet 7 inches tall, 150 to 180 pounds, fair or medium complexion, with a mustache, and wearing glasses. She also testified that he may have been 6 feet 1 inch tall. She observed him for 10 to 15 minutes and during some of that time, she was a couple of feet away from him. On July 18, she arrived at the police station at about 9 p.m., to view a lineup. After she identified defendant, the officers told her that he had "pulled a couple of other jobs" which confirmed to her that she picked the right man.

The State and defendant stipulated that Officer Crawford would testify that after the robbery, Gleaves described the man as 5 feet 9 inches tall with short black hair and she did not state that he was wearing glasses.

On June 29, 1990, the trial judge found that the State did not prove by clear and convincing evidence that there was an independent basis for the in-court identifications of defendant. The judge also stated that although he had previously found that the police did not have probable cause to arrest defendant, that finding was not final and he had jurisdiction to correct an error *sua sponte*. The case was continued for a hearing on that issue.

On August 6, 1990, the trial judge reaffirmed his previous rulings that there was no probable cause for defendant's arrest and there was no independent basis for the in-court identifications of defendant. Defendant was released from custody.

The State filed a notice of appeal on August 27, 1990.

Opinion

Initially, defendant challenges this court's jurisdiction, arguing that the State did not file a notice of appeal within 30 days of the March 23 ruling that there was no probable cause and suppressing the lineup identifications.

Supreme Court Rule 604(a)(1) allows the State to appeal from an order quashing an arrest or search warrant or suppressing evidence. (134 Ill. 2d R. 604(a)(1).) The pretrial rulings on motions to quash and suppress are not appealable under Rule 604(a)(1) until the trial judge has ruled on all of defendant's requested relief. (*People v. Rembert* (1980), 89 Ill. App. 3d 371, 411 N.E.2d 996.) The trial judge may reconsider a final appealable judgment or order within 30 days of its entry. (*People v. Heil* (1978), 71 Ill. 2d 458, 376 N.E.2d 1002.) A timely motion for reconsideration of a ruling granting a suppression motion will toll the time to file a notice of appeal under Rule 604(a)(1). See *People v. Williams* (1990), 138 Ill. 2d 377, 563 N.E.2d 385.

In this case, defendant moved to quash his arrest and suppress the lineup and in-court identifications of him. The trial judge ruled on March 23 that the police officers did not have probable cause to arrest defendant and he suppressed the lineup identifications of defendant. On June 29, the trial judge suppressed the in-court identifications of defendant. Contrary to defendant's argument, under *Rembert*, the pretrial rulings were not appealable until June 29, when the judge completed his rulings on defendant's requested relief.

Although it appears that the State should have filed its notice of appeal within 30 days of June 29, at that hearing the judge *sua sponte* opened reconsideration of the probable cause issue. In this case, unlike *Williams*, the State did not file a motion to reconsider; however, we believe that the holding of *Williams* is equally applicable here where the judge decided to reconsider his ruling *sua sponte*. As a result, the time for filing a notice of appeal was tolled until August 6, when the judge reaffirmed his previous rulings. Therefore, the State's notice of appeal, filed on August 27, was timely and this court has jurisdiction.

Considering the merits of the appeal, the State challenges the trial judge's rulings on defendant's motions to quash his arrest and suppress the lineup and in-court identifications of him. A trial judge's ruling on a motion to quash arrest and suppress evidence

will not be reversed on appeal unless it was manifestly erroneous. *People v. Henderson* (1990), 142 Ill. 2d 258, 568 N.E.2d 1234.

The State first argues that the trial judge erred when he found that the police did not have probable cause to arrest defendant.

The fourth amendment requires that the police have probable cause to arrest a person. (U.S. Const., amend. IV.) A police officer may arrest a person without a warrant when he has reasonable grounds or probable cause to believe that the person is committing or has committed an offense. (Ill. Rev. Stat. 1989, ch. 38, par. 107—2(1)(c); *People v. Tisler* (1984), 103 Ill. 2d 226, 469 N.E.2d 147.) To prove probable cause, the State must show that the facts and circumstances known to the arresting officer were sufficient to warrant a person of reasonable caution to believe that an offense was committed and that defendant committed the offense. *People v. Bates* (1991), 218 Ill. App. 3d 288, 578 N.E.2d 240.

In this case, the police based probable cause on information from Smith and Brunson, a case report of a pet store robbery, and a background check of defendant. Neither Smith nor Brunson provided information to police before and, therefore, they did not have proven reliability as informers. Smith told McDermott that defendant committed numerous robberies but did not link defendant to a specific robbery. Although the State argues that the police had information connecting defendant to several armed robberies, the only crime linked to defendant was the pet store robbery. That information came from Brunson, who told McDermott that he was with defendant when he committed the robbery. Brunson described defendant as a black man, 6 feet 3 inches tall, in his thirties, with a dark complexion. However, when McDermott checked the case report of the pet store robbery, it showed that the victim described the offender as a black man, in his thirties, 5 feet 9 inches tall, 150 pounds, with short black hair, and a mustache. This description of the offender in the case report did not corroborate Brunson's description of defendant. Further, contrary to the State's argument, defendant's previous convictions for armed robbery did not corroborate Brunson's information that defendant robbed the pet store.

As a result, the facts and circumstances known to the police when they arrested defendant did not support a finding that they had probable cause to believe that defendant committed the pet store robbery. Smith did not link defendant to a specific robbery. Brunson had never provided information to the police before and his information that defendant committed the pet store robbery was not corroborated. Further, the case report of the pet store robbery

showed that the victim described the offender differently than Brunson described defendant. Although the information the police had may have been sufficient to allow them to suspect defendant, it did not rise to the level of probable cause. The trial judge's ruling was not manifestly erroneous.

Next, the State argues that the lineup identifications of defendant were attenuated from his illegal arrest and, therefore, should not have been suppressed.

There are several factors to consider in determining whether a lineup identification was sufficiently attenuated from an illegal arrest: the temporal proximity of the illegal arrest to the identification; the purpose and flagrancy of the police officers' conduct; and the presence of intervening circumstances. *People v. Dortch* (1982), 109 Ill. App. 3d 761, 441 N.E.2d 100; see *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

Considering the first factor of temporal proximity, Robinson testified that the police entered Todd's house at about 3 or 4 p.m., but the arrest report stated that defendant was arrested at 6:15 p.m. McDermott testified that the lineup procedure lasted three to four hours. The record indicates that at least one witness, Gleaves, arrived at the station to view the lineup at 9 p.m. The passage of approximately three to six hours from the arrest to the lineup supports the trial judge's finding of temporal proximity. As to the purpose and flagrancy of the police officers' conduct, the officers testified that they went to Todd's house merely to verify his address. However, the witnesses in the house testified that four or five police officers entered both the front and back of the house without permission, without warrants, and with their guns drawn. They arrested both defendant and Robinson and they searched the house and Todd's car. They threatened to shoot Todd's dog. The officers told Robinson and defendant that they were being taken to the police station because of a car accident. This testimony supports the judge's finding that defendant was arrested solely as a pretext to obtaining an identification in a lineup and that the officers' conduct was flagrant. As to the third factor, there was no evidence in the record of intervening circumstances. As a result, the judge's decision that the lineup identifications were not attenuated from the illegal arrest was not manifestly erroneous.

Lastly, the State argues that the trial judge erred in suppressing the in-court identifications of defendant. The judge found that they did not have an independent basis.

An in-court identification may be admissible despite an illegal pretrial confrontation if the State proves with clear and convincing evidence, based on a totality of the circumstances, that the witness is identifying defendant based solely on his memory of the events at the time of the crime. (*People v. McTush* (1980), 81 Ill. 2d 513, 410 N.E.2d 861.) To determine whether the in-court identification had an independent basis, the court must consider the witness' opportunity to view the offender at the time of the crime, the accuracy of the witness' prior description of the offender, the witness' level of certainty in identifying the offender, the length of time between the crime and the confrontation, and the witness' acquaintance with the offender prior to the crime. *McTush*, 81 Ill. 2d 513, 410 N.E.2d 861.

■ In this case, Anderson, Hudson, and Gleaves, who witnessed three different armed robberies, identified defendant in lineups about two months after the robberies were committed. The witnesses did not have any prior acquaintance with defendant. Each witness had adequate opportunity and time to observe the offender. However, both Anderson's and Gleaves' descriptions of the offender were not accurate. Their descriptions varied from the date of the robbery to the time they were testifying and their descriptions were fairly broad. Anderson's descriptions varied from 5 feet 8 inches to 6 feet 5 inches tall and 175 to 200 pounds; Gleaves' descriptions varied from 5 feet 6 inches to 6 feet 1 inch tall and 150 to 180 pounds. Although Hudson's description was similar to defendant, she focused on the fact that the offender was neatly groomed and well dressed. Defendant was the only neatly groomed and well-dressed man in the lineup, which suggests the reason Hudson identified him. Also, after Anderson, Gleaves, and Hudson identified defendant, the officers told each of them that they picked the right man. These comments bolstered the witnesses' identifications of defendant in their own minds. For these reasons, it was not manifestly erroneous for the trial judge to rule that the State did not present clear and convincing evidence that the witnesses were identifying defendant based solely on their memory of the crime.

Affirmed.

MURRAY and GORDON, JJ., concur.