THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RUSSELL E. LEACH, Defendant-Appellee (Hosie Thurman *et al.*, Defendants).—THE PEOPLE OF THE STATE OF ILLINOIS, Defendant-Appellant, v. RUSSELL E. LEACH, Defendant-Appellee (Hosie Thurman *et al.*, Defendants).

Second District   Nos. 2—90—0998, 2—90—1407 cons.

Opinion filed January 8, 1993.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and William L. Browers, Gregory L. Slovacek, John X. Breslin, and Nancy Rink Carter, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, and Raymond Myles, of Chicago, for appellee.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

In consolidated appeals, the State asks us to reverse trial court orders granting motions by defendant, Russell Leach, to quash his arrest and suppress evidence. We hold that (1) we lack jurisdiction to hear the State's appeal in case No. 2—90—1407 (trial court No. 90—CF—2011); (2) the trial court did not manifestly err in concluding that the warrantless arrest of defendant inside his home was unconstitutional; and (3) the State is not entitled to a hearing on whether any of defendant's post-arrest statements to the police are admissible in spite of the illegality of the arrest. We therefore dismiss the appeal in case No. 2—90—1407 and affirm the judgment of the trial court in case No. 2—90—0998 (trial court No. 90—CF—1245).

On June 13, 1990, in case No. 90—CF—1245, defendant, Hosie Thurman and Clarence Thurman, Hosie Thurman's brother, were each

indicted on four counts of attempted armed robbery (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 18—2(a)), two counts of aggravated unlawful restraint (Ill. Rev. Stat. 1989, ch. 38, par. 10—3.1(a)), and two counts of unlawful restraint (Ill. Rev. Stat. 1989, ch. 38, par. 10—3(a)). All these charges were based on an incident that transpired early in the morning of May 24, 1990.

On August 17, 1990, in case No. 90—CF—2011, defendant was indicted on three counts of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)). The charges were based on alleged incidents of February 14, 1990, May 3, 1990, and May 6, 1990. Clarence and Hosie Thurman were indicted on two counts of armed robbery, based on the May 3, 1990, and May 6, 1990, incidents.

Maywood police officers arrested defendant at his home at about 6:30 a.m. on May 24, 1990. About five hours earlier, Downers Grove police arrested the Thurmans following a car chase during which a third person escaped.

On July 20, 1990, in case No. 90—CF—1245, defendant moved to quash his arrest and to suppress all evidence that was the product of the arrest. The Thurmans also moved to quash their arrests and to suppress evidence. On September 7, 1990, directly after a consolidated evidentiary hearing, Judge Thompson denied the Thurmans' motions. However, the judge found that defendant's warrantless arrest violated the fourth amendment (see *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371). Judge Thompson granted the motion to quash the arrest. Also on September 7, 1990, Judge Thompson entered a written order in case No. 90—CF—1245 suppressing the use at trial of all evidence resulting from defendant's arrest. On September 14, 1990, the State appealed from the September 7 orders (No. 2—90—0998). See 134 Ill. 2d R. 604(a).

On September 28, 1990, in case No. 90—CF—2011, defendant moved to quash his arrest and to bar from trial all evidence that was the product of the arrest. On October 16, 1990, defendant moved for an order applying collateral estoppel to his motion to quash arrest and suppress evidence. Defendant argued that, under principles of collateral estoppel, the court, in deciding defendant's September 28 motion to quash arrest and suppress evidence, was bound by its factual findings from the September 7, 1990, hearing. Defendant contended that because the evidence in each case was derived from the same arrest, the fourth amendment issues in each case were identical. Defendant's motion prayed for an order of collateral estoppel in case No. 90—CF—2011, "thereby quashing the arrest and suppressing the evidence therein."

On October 16, 1990, the trial court, per Judge John Nelligan, entered a written order stating that defendant's motion for collateral estoppel was granted and that case No. 90—CF—2011 was continued "for status" to November 30, 1990.

On November 30, 1990, the court, per Judge Thompson, entered a "Court Order for Collateral Estoppel." The order stated that the issues litigated and decided in the September 7, 1990, hearing in case No. 90—CF—1245 were the same as those raised in defendant's motion to suppress in case No. 90—CF—2011; that, at the September 7, 1990, hearing, the court found that defendant's warrantless arrest was unconstitutional because the police lacked both probable cause to arrest defendant and exigent circumstances to justify the warrantless in-house arrest; that, had the State brought the two prosecutions at the same time, Judge Thompson would have heard a single motion to quash arrest and suppress evidence and a subsequent motion would not have been necessary; and that defendant was entitled to an order of collateral estoppel. The order stated that collateral estoppel applied to defendant's motion to quash arrest and suppress evidence in case No. 90—CF—2011, "thereby quashing the arrest and suppressing the evidence therein." On November 30, 1990, the court, per Judge Nelligan, entered an order continuing both cases until May 23, 1991, "for status as agreed." On December 14, 1990, in case No. 90—CF—2011, the State filed its notice of appeal from the November 30, 1990, order suppressing evidence (No. 2—90—1407). We have consolidated the appeals.

The State contends that the trial court erred in finding that the police lacked probable cause and exigent circumstances to arrest defendant. The State argues further that, even should this court uphold the quashing of the arrest, we should remand this case to the trial court for a hearing on whether any of defendant's post-arrest statements were admissible because they were sufficiently purged of the taint of the illegal arrest.

Defendant replies that (1) this court lacks jurisdiction to hear the appeal in case No. 90—CF—2011 (No. 2—90—1407 on appeal) because it waited more than 30 days to appeal from the trial court's October 16, 1990, collateral estoppel order, which was in effect a suppression order immediately appealable under Supreme Court Rule 604(a); (2) the trial court did not manifestly err either in finding that the police lacked probable cause to arrest defendant or in finding that the police lacked the exigent circumstances necessary to validate a warrantless in-home arrest; and (3) the State has waived any hearing on attenuation by failing to raise the issue at the trial level.

We turn to the relevant evidence at the suppression hearing. Officer Timothy Gunn of the Downers Grove police department testified that, early in the morning of May 24, 1990, he was on patrol at the Finley Square Mall. All the stores were closed. Aside from a couple of cleanup crew vehicles, only one car, a white four-door Chevrolet, was parked in the mall lot. The car was parked "in an unusual manner." Looking beyond the car, Gunn saw two people running from the Burger King; another person waved and yelled toward Gunn. The two people running entered the Chevrolet. There was already a driver in the car. They drove north, at first with the headlights out. Gunn followed the car.

As Gunn followed him, the driver of the car increased his speed until both vehicles were going about 90 miles per hour on Finley Road. As he followed the car, Gunn radioed his base, which informed him that the police had just been notified of an armed robbery at the Burger King. As the two vehicles approached the border of Downers Grove and Lombard, Gunn saw the passenger door of the Chevrolet open. Someone tossed out an object, out of which another object fell. Gunn caught up to the Chevrolet at Grace Street in Lombard, about three or four miles from Downers Grove. When the Chevrolet stopped, one person got out from the passenger side and ran from the car toward the backyard of 106 Grace Street. The other two individuals cooperated with Gunn. Gunn handcuffed the two men and took them into custody. He later learned that the two arrestees were Clarence and Hosie Thurman.

Consistent with Officer Gunn's testimony, the State conceded that the police never obtained warrants to arrest or search the Thurmans or defendant.

Downers Grove police detective Dominic Scalzetti testified that, at about 1:30 a.m. on May 24, 1990, the police department telephoned his home. Scalzetti went to the station. There, at about 3:15 a.m., he interviewed Clarence Thurman. Thurman told Scalzetti that defendant was the third person involved in the attempted armed robbery at the Burger King and that defendant had been in the car with the Thurmans. Clarence Thurman later told Scalzetti defendant's address.

Immediately after interviewing Clarence Thurman, Scalzetti interviewed Hosie Thurman separately. Hosie Thurman also told Scalzetti that defendant was the third person involved in the Burger King incident. He also gave defendant's address.

Hosie Thurman further told Scalzetti that, as Officer Gunn pursued the three suspects north on Finley Road, defendant handed Hosie Thurman a gym shoe from the front of the Chevrolet. Hosie Thur-

man could see that the shoe contained a small caliber handgun. Defendant told Hosie Thurman to throw the shoe out of the vehicle. Thurman opened the back door and did so. Before the interview with Hosie Thurman, Detective Scalzetti had learned that a gym shoe and a small caliber gun had been found on the street down which the Thurmans had traveled in attempting to elude Officer Gunn.

Detective Scalzetti acknowledged that 10 minutes or more passed between the time the police came to the scene of the arrest and the time the Thurmans were arrested. Scalzetti did not know whether the Thurmans were transported to the police station in the same vehicle. Also, Scalzetti did not know whether, at the point the Thurmans were arrested, the brothers were kept apart or were allowed to talk to each other. Scalzetti did not talk to anyone at the Burger King, and he did not receive any descriptions from Burger King employees of the would-be robbers.

Downers Grove police detective Lee Hahn testified that, at about 1:30 a.m. on May 24, 1990, the police department telephoned him at home to request that he assist Scalzetti's investigation. Hahn first conducted interviews at the Burger King. The employees there told him that they were clearly able to see three people enter the restaurant. They described one of the men as about 6 feet 1 inch tall and weighing about 185 pounds.

Hahn next went to the Downers Grove police station, where he spoke with Officer Gunn and Detective Scalzetti. Officer Gunn told Hahn that the third suspect in the case was about 6 feet or 6 feet 1 inch tall, slim, and clad in a dark blue or black jogging suit. Gunn never told Hahn how far Gunn was from the third suspect or what the lighting conditions were when Gunn saw the third person. Gunn's description of the third suspect was consistent with the description the Burger King employees provided.

At about 5:30 a.m., Hahn spoke with Scalzetti, who told him that both Thurmans had implicated defendant in the attempted armed robbery. After his computer check confirmed defendant's address, Hahn informed the Maywood police department by telephone that defendant was a suspect in the Burger King incident. Hahn described defendant to the Maywood police, basing his description on those provided by Officer Gunn and the Burger King employees. He instructed the Maywood police to arrest defendant at defendant's home. At about 6:30 a.m., the Maywood police informed Hahn by telephone that defendant had been arrested and was at the Maywood police station.

Defendant and Officer Randy Brown of the Maywood police department gave differing versions of the arrest itself. Defendant testi-

fied that he was 19 years old and 6 feet 4 inches tall. He lived with his parents and siblings in Maywood. Before his arrest, he had been in bed since 10 p.m. At about 6:30 a.m. on May 24, 1990, as he and his parents were sleeping, he heard the doorbell ring. Clad in gray sleeping shorts, defendant answered the door. Two Maywood police officers were at the door; they asked him if Russell Leach was there. Defendant replied that he was Russell Leach. The officers opened the door all the way, walked into the house, handcuffed defendant, and took him to the police station. The police did not have their guns drawn. Defendant did not fight the police, but he did not consent to the arrest. He was not violating any laws when he was arrested.

Officer Brown testified that, at about 6:30 a.m. on May 24, 1990, he and two other Maywood police officers, all in uniform, went to defendant's house. One of the officers knocked on the door, and defendant's parents answered. The officers asked whether defendant was home. When defendant's parents said yes, the officers asked to come in so that they could speak to defendant. His parents agreed. Defendant was present.

Officer Brown explained at the hearing that the Downers Grove police department had informed him that defendant was a suspect in the Burger King incident. Brown testified that the officers went to defendant's residence so that defendant could be questioned at the police station. Defendant was not free to refuse to go to the station.

The officers did not display any weapons at defendant's residence, and there was no fighting or loud talking. Officer Brown testified that the police handcuffed defendant for their own safety. However, Brown admitted that, while the officers were at the house, he could see that defendant was dressed only in shorts and that defendant had no weapon in either hand.

After arguments of counsel, the trial judge stated that the defendant had been arrested without probable cause. The only evidence the police had that defendant was the third person in the Burger King incident consisted of the uncorroborated statements of Hosie and Clarence Thurman. Because the Thurmans were potential codefendants, their statements were inherently suspect. Moreover, what descriptions of the third person the police obtained lessened their reason to believe that defendant was the third participant. Although defendant was 6 feet 4 inches tall, Officer Gunn—a "trained officer"—and the Burger King employees said that the third man was 6 feet or 6 feet 1 inch tall.

The judge explained next that, even if the officers had probable cause to arrest defendant, the State had not shown exigent circum-

stances necessary to validate the warrantless arrest. The judge stated that the timing involved in the matter "indicated, that, apparently, the whereabouts of defendant were known, there was nothing to indicate the likelihood of flight from the residence, whether he was to be found there. In fact, it was not even known if he was there." Besides having shown no likelihood that defendant would have fled had the police taken time to obtain a warrant, the State had failed to show there was any danger that defendant would destroy evidence or pose a threat to the community.

We turn first to defendant's argument that this court lacks jurisdiction to address the appeal in case No. 90—CF—2011. Under Supreme Court Rule 604(a) (134 Ill. 2d R. 604(a)), the State may appeal from a pretrial order "the substantive effect of which results in *** quashing an arrest or search warrant; or suppressing evidence." Supreme Court Rule 606(b) (134 Ill. 2d R. 606(b)) requires the State to file its appeal within 30 days of such an order. Defendant argues that Judge Nelligan's October 16, 1990, order, by precluding the State from relitigating the finding in case No. 90—CF—1245 that defendant's arrest was unconstitutional and that the State could not use the evidence resulting from the arrest, had the substantive effect of quashing the arrest and suppressing the evidence in case No. 90—CF—2011. We agree.

We have found no case addressing the unusual situation here. Both parties cite *People v. Rembert* (1980), 89 Ill. App. 3d 371. In *Rembert,* the defendant moved to quash his arrest and to suppress a lineup identification and statements. The trial court ruled first that the arrest was improper and that physical evidence seized as a result of the arrest would be quashed. The court reserved its ruling on whether to suppress the identification evidence and statements. Four days after its initial ruling, the trial court suppressed the identification evidence and statements. The State filed its notice of appeal more than 30 days from the initial ruling but within 30 days of the second order. *Rembert,* 89 Ill. App. 3d at 374.

On appeal, the defendant argued that the appellate court lacked jurisdiction to consider the State's challenge to the initial order quashing the arrest and suppressing the physical evidence, as the notice of appeal was filed more than 30 days after that order. The appellate court disagreed, explaining that the relevant practice rules should be interpreted to discourage piecemeal appeals. Thus, the first ruling was not final and appealable because the trial court had yet to make a complete determination of the entire suppression matter. Only when the trial court did so, with its second order, did the 30-day period of

Supreme Court Rule 606(b) begin to run. (*Rembert*, 89 Ill. App. 3d at 374-75; see also *People v. Jackson* (1979), 77 Ill. App. 3d 117, 121.) As more recent cases recognize, the crucial issue in determining if a given suppression order is immediately appealable under Supreme Court Rule 604(a) is whether the order grants all or only part of the relief that the defendant has requested. *People v. Smith* (1992), 232 Ill. App. 3d 121, 127; *People v. Abata* (1988), 165 Ill. App. 3d 184, 186-87.

■ We conclude that Judge Nelligan's order of October 16, 1990, though nominally an "order granting collateral estoppel," was in substance and effect a suppression order which granted defendant all the relief he sought in his September 28, 1990, motion to quash arrest and suppress evidence in case No. 90—CF—2011. The State concedes that all evidence defendant sought to suppress in case No. 90—CF—2011 was the product of the arrest that the trial court had earlier quashed. Defendant's motion to apply collateral estoppel to case No. 90—CF—2011 explicitly requested that this evidence be suppressed because the trial court had already determined that the police lacked both probable cause to arrest defendant and the exigent circumstances necessary to validate an in-home arrest even with probable cause.

By applying collateral estoppel to case No. 90—CF—2011, Judge Nelligan held that the issues of probable cause and exigent circumstances, which had earlier been decided adversely to the State in case No. 90—CF—1245, could not be relitigated in case No. 90—CF—2011. The State does not deny that this procedure was entirely proper. (See, e.g., *People v. Gaddis* (1972), 4 Ill. App. 3d 691, 692.) The State does not argue that Judge Nelligan should not have applied collateral estoppel as he did. Indeed, in making the same argument for reversal as to each case, the State implicitly acknowledges the requisite identity of issues between the two proceedings. See generally *Housing Authority v. Y M C A* (1984), 101 Ill. 2d 246, 252.

We will not elevate form over substance, so we conclude that the October 16, 1990, order of collateral estoppel was an immediately appealable suppression order in case No. 90—CF—2011. The fact that the judge continued the cause for status is not material. A suppression order does not finally adjudicate a criminal prosecution, but only bars certain evidence from the impending trial. The order effectively quashed the arrest and suppressed evidence in case No. 90—CF—2011 (see 134 Ill. 2d R. 604(a)), granting defendant all the fourth amendment related relief that he sought in that case. Therefore, the order was appealable immediately. By waiting more than 30 days to appeal

from this order, the State has deprived us of jurisdiction to consider the trial court's decision in case No. 90—CF—2011.

■ The State argues that the order of October 16, 1990, was not appealable because the order "made no ruling on what the effect or applicability of collateral estoppel would be." We find this argument strained. Defendant's motion for collateral estoppel unambiguously requested that the trial court find that the issues of probable cause and exigent circumstances, among other issues, could not be relitigated. Based on this finding, defendant requested that the trial court quash the arrest and suppress the evidence in case No. 90—CF—2011. Judge Nelligan's October 16, 1990, order, drafted by counsel for the State, states that defendant's motion for collateral estoppel "is granted."

■ The State argues further that the October 16, 1990, order was not appealable under Rule 604(a) because it did not comply with the requirement of section 114—12(e) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 114—12(e)) that it "state the findings of facts and conclusions of law upon which the order or judgment is based." The State does not explain why any failure to comply with this statutory requirement affects determinations of jurisdiction or appealability under the supreme court rules. Insofar as the State requests us to infer that there is a conflict between the statute's formal requirements and the straightforward meaning of Supreme Court Rule 604(a), we must either decline the invitation or hold that the rule controls. See *People v. Felella* (1989), 131 Ill. 2d 525, 538; *People v. Lendabarker* (1991), 215 Ill. App. 3d 540, 560.

Moreover, the State's assertion that the order of collateral estoppel did not comply with section 114—12(e) is itself questionable. Although the order states only that the defendant's motion for collateral estoppel is granted, that statement, by the very nature of collateral estoppel, incorporates the factual findings (and implicit legal conclusions) of the suppression order in case No. 90—CF—1245.

We dismiss the appeal from case No. 90—CF—2011 and turn to the merits of the State's appeal from the trial court's ruling in case No. 90—CF—1245.

The State argues first that the trial court erred in quashing defendant's arrest and in suppressing the fruits of that arrest. The State concedes that the Maywood police arrested defendant inside his residence without a warrant and without his consent. The State further recognizes that such a warrantless arrest requires both (1) probable cause and (2) exigent circumstances. (See *Payton*, 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *People v. Foskey* (1990), 136 Ill. 2d 66, 74-75.) Finally, the State acknowledges that a reviewing court will

not reverse a trial court's ruling on a motion to suppress unless that ruling is manifestly erroneous. (*People v. Adams* (1989), 131 Ill. 2d 387, 400.) "Manifestly erroneous" is commonly understood to mean " 'palpably erroneous and wholly unwarranted' " or " 'arbitrary, unreasonable, and not based upon the evidence.' " *People v. Shelby* (1991), 221 Ill. App. 3d 1028, 1039, quoting *People v. Harris* (1991), 220 Ill. App. 3d 848, 860.

We will forego an independent discussion of whether probable cause existed to arrest defendant. We find the trial court did not manifestly err in concluding that exigent circumstances did not exist to validate the warrantless arrest in defendant's residence.

The fourth amendment prohibits the police from making a warrantless entry into a residence to effect a routine felony arrest. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371.) However, exigent circumstances may validate such an otherwise presumptively unreasonable entry. (*Minnesota v. Olson* (1990), 495 U.S. 91, 100, 109 L. Ed. 2d 85, 95, 110 S. Ct. 1684, 1690.) The State has the burden to show such exigent circumstances. (*Foskey*, 136 Ill. 2d at 75.) Because entry into the home is the chief evil against which the fourth amendment is directed, the State's burden to show such exigencies is a heavy one. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 749-50, 80 L. Ed. 2d 732, 743, 104 S. Ct. 2091, 2097; *People v. Krueger* (1991), 208 Ill. App. 3d 897, 907.

Exigency must be decided on the facts of each case, but courts regularly have considered (1) whether the offense under investigation has been recently committed; (2) whether there was any deliberate or unjustified delay by the officers during which time a warrant could have been obtained; (3) whether a grave offense, particularly a crime of violence, was involved; (4) whether the suspect was reasonably believed to be armed; (5) whether the police acted upon a clear showing of probable cause; (6) the likelihood that the suspect would escape if not swiftly apprehended; (7) whether there was strong reason to believe the suspect was in the premises; and (8) whether the police entered peaceably. (*People v. White* (1987), 117 Ill. 2d 194, 216-17.) These factors are neither exclusive nor to be rigidly applied in each case. (*White*, 117 Ill. 2d at 217.) The guiding principle in each case is reasonableness. (*People v. Abney* (1980), 81 Ill. 2d 159, 173.) The State must show that circumstances militated against delay and justified the officers' decision to proceed without a warrant. *Foskey*, 136 Ill. 2d at 75.

In arguing that the trial court should have found that exigent circumstances justified the officers' decision to arrest defendant without

a warrant, the State emphasizes the violent nature of the offense (armed robbery), the short time between the naming of defendant as a coparticipant in the armed robbery and the arrest, and the peacefulness of the entry and arrest. Defendant replies that there was no reason to believe that defendant was armed at the time of the arrest, as the weapon used in the robbery had been discarded. Defendant also claims that the trial court found there was no reason at the time of the arrest to fear that defendant would flee. The court found that the police could only guess that defendant would be at his Maywood residence, which was far from where the third suspect escaped pursuit. Defendant notes finally that the trial judge stated there was no reason that the police could not have obtained a warrant from an area magistrate for defendant's arrest.

■ We conclude that the facts are not so one-sided that the trial court manifestly erred in holding that the State failed to meet its heavy burden to show exigent circumstances. Although the crime was serious, the police had recovered the weapon used in the attempted robbery. The preplea report states that witnesses told police a single weapon was used in the offense. The arresting officer admitted that, when defendant answered the door, the police could see that defendant was unarmed.

Moreover, the State has not challenged the trial judge's findings that the police could only speculate that defendant would be at his Maywood residence a few hours after the escape at Lombard and that there was no likelihood of defendant's flight from his home. As to these matters, we shall not assume the role of advocate for the State on appeal.

Finally, as the defendant notes, the trial judge stated on the record that he could see no reason why the police could not have obtained a warrant within a short time of moving against defendant. The trial judge concluded that this consideration made the officers' action unreasonable, and we cannot call this conclusion manifestly erroneous.

Although each case must be decided on its own facts, two cases we have found are sufficiently similar to offer us guidance. In *Minnesota v. Olson* (Minn. 1989), 436 N.W.2d 92, *aff'd* (1990), 495 U.S. 91, 109 L. Ed. 2d 85, 110 S. Ct. 1684, two men participated in a robbery and fatal shooting at a service station early one Saturday morning. The police arrested the gunman as the latter fled from his house in his car with another man. Inside the gunman's car, police found evidence that the defendant was the other man in the car. The next day, an informant telephoned the police that a man with defendant's first

name had been the second participant in the robbery and that the second offender was planning to leave town by bus. On that Sunday afternoon, the police, without a warrant, entered the residence where defendant was staying and arrested him. *Olson*, 436 N.W.2d at 93-94.

The Minnesota Supreme Court reversed the defendant's conviction, holding that the trial court should have found that the police lacked exigent circumstances for the warrantless entry and arrest. The court observed initially that the police had quickly obtained a warrant to search the gunman's car and that the mere fact that they arrested defendant on a Sunday rather than a Saturday was "surely a curious reason for not observing the constitutional safeguards of citizens." (*Olson*, 436 N.W.2d at 96.) Conceding the gravity of the crime, the court stressed that the police had already recovered the murder weapon, that probable cause rested primarily on the words of an untested informant, and that the police had surrounded the house in which they arrested defendant. (436 N.W.2d at 97.) In affirming, the United States Supreme Court approved the State court's application of the exigent circumstances doctrine to the facts of the case. *Olson*, 495 U.S. at 100-01, 109 L. Ed. 2d at 95-96, 110 S. Ct. at 1690.

In *People v. Shelby* (1991), 221 Ill. App. 3d 1028, the police arrested Shelby shortly after arresting a suspect who implicated Shelby in a murder and a burglary. The appellate court affirmed the trial court's finding of a *Payton* violation. The court noted that the murder weapon had already been recovered; that the showing of probable cause was not clear; that the police had no reason to believe that Shelby was armed at the time of the arrest; and that the police had no reason to believe that Shelby would flee his house, as he had not yet done so two days after the murder. *Shelby*, 221 Ill. App. 3d at 1040-41.

The State argues last that, even if the trial court properly quashed defendant's arrest, the cause should be remanded for a hearing at which the trial court could determine whether any of the statements taken from defendant after his arrest were purged of the taint of the illegal arrest.

██ We hold that the State has waived any such hearing by never requesting one, or otherwise raising the attenuation issue at the trial level. It is settled that the waiver rule applies to the State as well as the defendant. *Adams*, 131 Ill. 2d at 394-96; *People v. Crespo* (1991), 207 Ill. App. 3d 947, 950-51.

*People v. Bates* (1991), 218 Ill. App. 3d 288, on which the State relies, does not hold otherwise. In *Bates*, the trial court *denied* the defendant's motion to quash arrest and suppress evidence. Reversing,

the appellate court held that, on remand, the State would be entitled to an attenuation hearing. (*Bates*, 218 Ill. App. 3d at 298.) In *Bates*, in contrast to the case at bar, the trial court determined that the defendant's arrest was proper. Therefore, the State never had any reason at the trial level to move for an attenuation hearing. Here, the trial court found that the defendant's arrest was illegal. The State could have moved for an attenuation hearing and simply declined to do so. Therefore, the issue is waived.

The appeal in case No. 2—90—1407 is dismissed, and, in case No. 2—90—0998, the judgment of the circuit court of Du Page County is affirmed.

No. 2—90—0998, Affirmed.
No. 2—90—1407, Dismissed.

UNVERZAGT and DOYLE, JJ., concur.