THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT WALENSKY, Defendant-Appellant.

First District (3rd Division)   No. 1—95—1533

Opinion filed December 31, 1996.

---

Algis F. Baliunas, of Orland Park, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kalina Tulley, and Eric Leafblad, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

The defendant, Robert Walensky, was charged by indictment with permitting an unlawful use of a building in violation of section 406.1 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56$^{1}$/2, par. 1406.1 (now 720 ILCS 570/406.1 (West 1994))), and with possession of a controlled substance with intent to deliver in violation of section 401(a)(2)(B) of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56$^{1}$/2, par. 1401(a)(2)(B) (now 720 ILCS 570/ 401(a)(2)(B) (West 1994))). After a bench trial, defendant was convicted on the amended charge of possession of controlled substance with intent to deliver under section 401(a)(2)(A) of the Controlled Substances Act. Ill. Rev. Stat. 1989, ch. 56$^{1}$/2, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1994)).[1] Before the matter could proceed to sentencing, defendant filed a motion for a new trial, which the trial court denied. The trial court then sentenced defendant to a term of six years' imprisonment. Defendant appeals his conviction,

---

[1]Section 401(a)(2)(B) of the Controlled Substances Act applies to the possession of between 100 and 400 grams of cocaine. Based on the trial court's suppression of certain evidence not directly at issue in this appeal, the State amended the charge against defendant to a violation of section 401(a)(2)(A), which applies to the possession of between 15 and 99 grams of cocaine, and for that same reason did not pursue a conviction against the defendant for permitting an unlawful use of a building.

urging reversal based upon certain alleged pretrial errors and upon the alleged insufficiency of the evidence.

FACTS—Pretrial Proceedings

On February 1, 1993, defendant filed a motion entitled motion to quash search warrant and suppress evidence. The search warrant referred to in the motion named the defendant personally and the basement apartment located at 3617 West 61st Place, Chicago, Illinois, as the subjects of the search. The warrant provided for the seizure from the defendant of one .38-caliber semi-automatic pistol, identification and proof of his residency, and any other evidence related to the offense of felony unlawful use of weapons. The sworn complaint for the search warrant was completed by Chicago police officer Robert O'Neill. In it, Officer O'Neill stated that a confidential informant told him that the defendant was involved in weapons trafficking; that the defendant had offered to sell him weapons and cocaine; and that the defendant had told him that he kept the weapons at his place of residence. The complaint for search warrant also stated that the police therefore initiated a surveillance of the defendant, during which they saw defendant traveling between his place of business late at night and his alleged residence, 3617 West 61st Place. According to the complaint, the informant also allegedly told O'Neill that he regularly saw the defendant put a .38-caliber semi-automatic pistol in his coat pocket before leaving work for home, and that he had seen the defendant do so at 9:50 p.m. on November 12, 1992, before the defendant left for home. The complaint further stated that defendant's car was seen at 3617 West 61st Place at 7 a.m. on the following morning. Lastly, it recited that the defendant was a known weapons and narcotics dealer and detailed several of defendant's felony convictions, which included burglary, robbery, and aggravated assault.

The defendant's motion sought to suppress evidence seized pursuant to the search warrant from 3617 West 61st Place and from defendant's person. The motion also sought to suppress evidence seized in another search that was not covered by any search warrant, involving a restaurant and bar called Alfredo's, purportedly owned by defendant and located at 7138 South Western Avenue, Chicago, Illinois.

On June 29, 1993, a hearing was scheduled on defendant's entire motion to quash and suppress, but because of the absence of the police officers who executed the search warrant, the parties agreed to proceed on a limited basis to address only the legal sufficiency of the search warrant and the sworn complaint in support of its issuance.

Pursuant to the June 29 hearing, the trial court held that the credibility of the informant identified in the complaint was not sufficiently established to support a finding of probable cause. In so holding, the trial court stated as follows:

"So what this boils down to is we have a person saying the defendant committed the offense of possession of a weapon, and then a showing that he is a felon. And I consider the fact he is carrying a weapon on his person \*\*\* [to rest] entirely on this informant and no one's knowledge \*\*\*. I don't think anything established his credibility. I would say he might have a stop for articuble [sic] suspicion maybe. It is not probable cause. Way short of probable cause."

Accordingly, the trial court suppressed the evidence seized pursuant to the warrant from the defendant's person and from the apartment at 3617 West 61st Place. The court then postponed the remainder of defendant's motion to quash and suppress, relating to evidence seized during the search of Alfredo's, for an evidentiary hearing on another date.

More than two months later, on September 7, 1993, before the remaining issues under defendant's motion to quash and suppress were heard, the State filed a motion to reconsider the trial court's June 29, 1993, order quashing the search warrant and suppressing the evidence seized pursuant thereto. At a hearing on March 16, 1994, the defendant objected to the trial court's reconsideration of its June 29 order, because that motion was filed more than 30 days after the entry of that order. This objection was overruled.

The parties then proceeded to the merits of the State's motion to reconsider. In that motion, the State urged the trial court to reconsider its June 29 order excluding evidence seized pursuant to the search warrant, on the grounds that the officers who obtained and executed the warrant relied upon it in good faith. The State urged that the "good faith" rule enacted pursuant to the decision of the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984), applied and that the seized evidence need not be excluded. In that regard, the parties then stipulated that Chicago police officer Robert O'Neill, who obtained the search warrant, would testify to the steps taken in obtaining the warrant, which included procuring a review of the warrant by an assistant State's Attorney on felony review, as well as the approval of a circuit judge who reviewed the warrant in Officer O'Neill's presence.

At the close of the March 16, 1994, hearing, defendant asked the trial court for an evidentiary hearing to introduce evidence to negate the State's "good faith" argument. In support, defendant's counsel

purported to make an oral offer of proof, in which he alleged the following: (1) that although the informant said defendant always carried a gun, defendant did not have a gun on his person when he was searched; and (2) that the police officers who obtained and executed the search warrant in the instant case had conducted two prior warrantless searches of the defendant, during which the officers seized evidence later suppressed by judges other than the judge in the instant case.

The trial court responded that it would permit defendant to introduce evidence to negate the State's "good faith" contentions, but only if defendant would file a written motion by March 31, 1994, supported by affidavits, showing reckless disregard for the truth on the part of the officers who executed the search warrant, or that the judge who signed the search warrant was misled by the information of the affiant officer. The defendant thereafter filed a written motion on April 21, 1994, which sought an evidentiary hearing regarding the State's "good faith" argument. That motion was submitted without supporting affidavits and reargued the untimeliness of the State's motion to reconsider, reiterated the grounds for the proposed evidentiary hearing set forth in defendant's earlier offer of proof, and provided some details of the previous warrantless searches alluded to therein.

The trial court continued the case until May 25, 1994, for argument on all motions filed prior to that date. At the May 25 hearing, the trial court denied defendant's motion for evidentiary hearing and granted the State's motion to reconsider pursuant to the "good faith" doctrine. The trial court then addressed the remaining allegations in defendant's motion to quash and suppress relating to the evidence seized during the warrantless search of Alfredo's. In that regard, the court heard the testimony of the defendant in his own behalf and of Officer O'Neill for the State, and then ruled that the evidence seized from Alfredo's was to be suppressed.

FACTS—TRIAL

At trial, the State called a single witness, Chicago police officer Dennis Cullom. On direct examination, Officer Cullom testified that on November 14, 1992, at 3:30 p.m., pursuant to a search warrant in his possession, he and several other Chicago police officers stopped the car that defendant was driving near defendant's bar, Alfredo's, located at 7138 South Western Avenue in Chicago. The defendant was then informed of the search warrant, and a search of his person revealed his possession of a small packet of a substance that Cullom suspected was cocaine. The defendant then informed the officers that

there was some money in the trunk of his car that belonged to his business. (The officers later turned that money, approximately $4,000, over to an employee of the defendant.) Defendant was then taken into custody and advised of his *Miranda* rights.

· Officer Cullom further testified that he and the other officers then drove defendant to the basement apartment at 3617 West 61st Place, which was identified as an additional subject of their search warrant. According to Cullom, on the way there, the defendant told him that he resided at that address and that a police officer named Harold Gordon owned the building. Upon their arrival at the apartment, defendant asked the officers not to break down the front door. Defendant unlocked that door with his own set of keys. Cullom stated that the officers proceeded to search the apartment for 45 minutes. During that search, in a hallway closet, the officers discovered two bags of white powder and white rocks, which they suspected to be approximately 51 grams of cocaine, as well as a box that contained over $9,000 in denominations of $5, $10, $20 and $50 bills. In that closet, Officer Cullom also saw men's clothing, shirts, coats, and pants, all of which appeared to him to be clothing that would fit a person of defendant's size. (The record reflects that defendant was over six feet in height.)

Officer Cullom also testified that a search of the kitchen of that apartment revealed plastic bags, a mixer, an empty bottle marked "Inositol," and a portable telephone. Cullom stated that based upon the thousands of narcotics arrests that he had made during his career as a Chicago police officer, he knew that Inositol was used to cut cocaine in order to increase its street value. Cullom estimated the street value of the cocaine that they found to be $7,100. He further said that the mixer that he seized could be used to mix cocaine with Inositol and to grind rock cocaine, and that the plastic bags that he seized could be used to package smaller amounts of cocaine.

On cross-examination, Officer Cullom testified that the purpose of the search according to the search warrant was to find a .38-caliber semi-automatic pistol, identification, and proof of residency. Additionally, he said that the defendant told him that the small packet of cocaine found on defendant's person was for his personal use. Cullom also stated that plastic bags such as those that the officers seized could be used as lunch bags; that the mixer seized could be used to mix coffee; that Inositol powder has other uses besides that of mixing with cocaine; that he did not find any scale in the subject apartment; that he never asked defendant to try on any of the clothes he saw there; and that he did not know who owned the portable telephone that they seized. Cullom further said that the officers did not find

anything with defendant's name on it in the apartment and that defendant did not admit that it was his residence while they were there, but he did make such an admission on the way to the residence and later at the police station. Officer Cullom also identified the driver's license of the defendant and his voter registration card, which were issued to defendant in January and in September 1992, respectively, and which indicated that defendant's address was the same as that of his tavern, Alfredo's.

On redirect examination, Officer Cullom testified that there was no apartment located at Alfredo's; that besides the bar/restaurant on its main floor, there was a banquet hall in its basement; and that the building had been demolished since the date of the search. Cullom also stated that it did not appear that anyone was living at Alfredo's or that Alfredo's was defendant's residence. Cullom further testified that the plastic bags that they found in the kitchen of the apartment at 3617 West 61st Place could not have been used to hold sandwiches, because those bags had been cut on an angle to enable them to be tied in a manner very similar to the manner in which the plastic bags containing cocaine that they found were tied. On re-cross-examination, Officer Cullom stated that in the basement at Alfredo's there was a small room with a desk in it. Cullom further stated that, while on the day in question he did not recall also seeing a bed in that room, he had seen a bed there on a prior occasion.

Following Officer Cullom's testimony, the parties stipulated that two Chicago police department crime lab employees would testify that all of the white powder and rocks found during the subject search tested positive for cocaine, weighing in total approximately 50 grams. On the State's motion, the trial court admitted into evidence all of the aforementioned items seized in the search of defendant's person and of 3617 West 61st Place, over defendant's renewed objection relating to the alleged untimeliness of the State's motion to reconsider its suppression order. The State then rested. On defendant's motion, and over the State's objection, the trial court admitted into evidence defendant's driver's license and voter registration card. The defense then rested.

Following closing arguments, the trial court found defendant guilty of possession of a controlled substance with intent to deliver. Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1994)). Defendant filed a motion for new trial, from which defendant omitted any allegation concerning the denial of an evidentiary hearing. The trial court denied that motion, and defendant now appeals.

DISCUSSION

On appeal, defendant contends that the trial court did not have jurisdiction to entertain the State's motion to reconsider its June 29, 1993, order suppressing the evidence seized pursuant to the search warrant, since that motion was filed more than 30 days after the entry of the June 29 order. The defendant further contends that the trial court erred substantively in granting the motion to reconsider under the "good faith" exception to the exclusionary rule as articulated in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). In that regard, defendant also contends that the trial court erred in denying him the right to present evidence to counter the "good faith" contentions of the State. Finally, defendant challenges his conviction on the grounds that the evidence presented was insufficient to support his conviction. For the reasons that follow, we affirm.

Defendant first contends that the trial court erred in reconsidering its June 29, 1993, order more than 30 days after its entry. Defendant would urge that by the time the State filed its motion to reconsider on September 7, 1993, the trial court had lost jurisdiction over the June 29 order. In further support, defendant argues that the June 29 order was appealable upon its entry under Illinois Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)), which provides, *inter alia*, that the State may appeal from a pretrial order quashing an arrest or search warrant or suppressing evidence, and that once the right to appeal took hold, the trial court was divested of its jurisdiction. We disagree.

■ A trial court retains jurisdiction over pretrial orders to suppress evidence for 30 days. *People v. Stokes*, 49 Ill. App. 3d 296, 364 N.E.2d 300 (1977). Such orders, although interlocutory, are appealable when entered and may therefore not be relitigated unless a motion for reconsideration is timely filed. *People v. Williams*, 138 Ill. 2d 377, 563 N.E.2d 385 (1990); *People v. Taylor*, 50 Ill. 2d 136, 277 N.E.2d 878 (1971). *Cf. People v. McBride*, 114 Ill. App. 3d 75, 448 N.E.2d 551 (1983). Where, however, the trial court does not purport to complete its determination of all the issues raised in a motion to suppress, an interim, partial disposition will not trigger a right to appeal. See *People v. Smith*, 232 Ill. App. 3d 121, 596 N.E.2d 789 (1992) (suppression order not appealable under Rule 604(a)(1) until the trial court completed rulings on all of the relief requested by the defendant in its motion to quash and suppress). Accord *People v. Jackson*, 77 Ill. App. 3d 117, 395 N.E.2d 976 (1979).

The case of *People v. Rembert*, 89 Ill. App. 3d 371, 411 N.E.2d 996 (1980), is directly in point. In *Rembert*, prior to trial, the defendant

simultaneously filed three written motions to quash arrest and suppress evidence seized pursuant thereto, to suppress a lineup identification, and to suppress oral statements made by the defendant. On February 9, 1979, the trial court granted defendant's motion to quash the arrest and suppress evidence seized pursuant thereto, but reserved ruling on the admissibility of the lineup identification and statements made by the defendant until February 13, 1979, at which time the court suppressed that evidence as well. The State filed its notice of appeal from both orders on March 14, 1979, within 30 days of the latter order, but more than 30 days after the earlier one. The *Rembert* court stated that the notice of appeal was timely filed as to both orders. In so holding, the court stated that the earlier, February 9 suppression order was not "a complete, final and appealable determination of the entire suppression matter," which was not had until the entry of the February 13 order. *Rembert*, 89 Ill. App. 3d at 375, 411 N.E.2d at 1000.

■ As in *Rembert*, here, the trial court's June 29, 1993, order was not a complete, final, and appealable determination of the suppression matter. As noted, that order only purported to deal with part of defendant's motion to quash and suppress, to the extent that it addressed evidence seized from defendant's person and from the basement apartment at 3617 West 61st Place on November 14, 1992. The remaining suppression contentions in defendant's motion were continued to the subsequent hearing date of May 25, 1994, because police officers who could testify as to that search were not present at the June 29 hearing. Therefore, as in *Rembert*, the trial court's partial ruling on defendant's motion to quash and suppress was not final and appealable on June 29. It is also noteworthy that, unlike the facts in *Rembert*, where separate motions were filed, all of the relief sought by the defendant here was combined into a single motion to quash and suppress. There is therefore all the more reason here to hold that the trial court's partial ruling did not become immediately appealable and to permit the trial court to entertain a delayed motion to reconsider. Accordingly, the trial court retained the power to reconsider the June 29 order until 30 days after it ruled on the remaining contentions in defendant's motion on May 25, 1994, well beyond the date on which the State filed its motion to reconsider, September 7, 1993. See *Smith*, 232 Ill. App. 3d 121, 596 N.E.2d 789; *Rembert*, 89 Ill. App. 3d 371, 411 N.E.2d 996; *Jackson*, 77 Ill. App. 3d 117, 395 N.E.2d 976. *Cf. In re Johnson*, 102 Ill. App. 3d 1005, 429 N.E.2d 1364 (1981) (trial court retains jurisdiction to vacate or modify an unappealable interlocutory order until final order is entered).

The defendant relies on the decision of *People v. Williams*, 138

Ill. 2d 377, 563 N.E.2d 385 (1990), in support of his contention that the trial court erred in addressing the State's motion to reconsider more than 30 days after the entry of the June 29 order. However, that case is inapposite. In *Williams*, the order whose reconsideration was at issue had granted the defendant's motion to suppress in its entirety. It simply failed to take into consideration all factors that would have had a bearing upon its determination. Nor did the trial court in *Williams* purport to reserve jurisdiction to consider any of those factors at any later time. Unlike *Williams*, here, the trial court's June 29 suppression order only purported to resolve a portion of the issues raised in defendant's motion to quash and suppress, reserving the remaining issues for future determination. Correspondingly, in *Williams*, there was no question that the initial order of the trial court became immediately appealable. Indeed, the State filed an immediate appeal in that case only to voluntarily withdraw it later on and to instead file its motion to reconsider. In this case, since the June 29 order of the trial court purported only to resolve a portion of the issues raised, reserving the remaining issues to a later date, it is clear that no appeal could have been taken from the June 29 order until all remaining issues were resolved. See *Rembert*, 89 Ill. App. 3d 371, 411 N.E.2d 996. See also *Smith*, 232 Ill. App. 3d 121, 596 N.E.2d 789; *Jackson*, 77 Ill. App. 3d 117, 395 N.E.2d 976.

■ Defendant next contends that the trial court erred in holding that the evidence seized under the search warrant was admissible under the "good faith" exception to the exclusionary rule. See *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984); *People v. Stewart*, 104 Ill. 2d 463, 473 N.E.2d 1227 (1984) (adopting *Leon*); 725 ILCS 5/114—12(b)(1), (b)(2)(i) (West 1992) (codifying *Leon*). We disagree. On appeal, a trial court's ruling on a motion to suppress will not be disturbed unless its determination is manifestly erroneous, and a trial court's factual findings relevant to an officer's good faith will be accepted unless they are against the manifest weight of the evidence. *People v. Turnage*, 162 Ill. 2d 299, 642 N.E.2d 1235 (1994); *People v. Janis*, 139 Ill. 2d 300, 565 N.E.2d 633 (1990); *Smith*, 232 Ill. App. 3d 121, 596 N.E.2d 789. Whether the "good faith" exception applies in the first instance is a purely legal question, which we review *de novo*. *Turnage*, 162 Ill. 2d 299, 642 N.E.2d 1235.

■ In *United States v. Leon*, police officers conducted a drug investigation of the defendants and then prepared an extensive application for search warrant which they presented to several district attorneys. The district attorneys, upon concluding that probable cause existed, assisted the police officers in drafting affidavits, which were then presented to a judge who issued a search warrant that was

later found to be invalid because it lacked probable cause. The *Leon* court held that the exclusion of evidence seized pursuant to a facially valid warrant was not required because the police officer acted in objectively reasonable reliance on the warrant. In so holding, the *Leon* court stated as follows:

> "[T]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. ***
>
> *** Judges and magistrates are not adjuncts to the law enforcement team; as neutral judicial officers, they have no stake in the outcome of particular criminal prosecutions. ***
>
> * * *
>
> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 916-27, 82 L. Ed. 2d at 694-701, 104 S. Ct. at 3417-22.

The *Leon* court stated that suppression would be appropriate if (1) the judge who issued the warrant was misled by information in an affidavit that the affiant knew or should have known was false; (2) the issuing judge wholly abandoned his neutral and detached judicial role; (3) the supporting affidavit was so lacking in probable cause that official belief in the existence of probable cause was unreasonable; or (4) the search warrant was so facially deficient, *i.e.*, failed to particularize the place to be searched or the things to be seized, that the executing officers could not have believed it was valid. Subsequently, the holding in *Leon* was expanded in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), to apply as well to evidence seized in good faith during warrantless searches of a business pursuant to a statute later found to be unconstitutional.

■ In the instant case, as in *Leon*, the record reflects that after a surveillance of the defendant, and based upon information provided by a confidential informant, Chicago police officer Robert O'Neill prepared an application for search warrant. As noted, in his complaint, Officer O'Neill indicated that the informant told him that the defendant offered to sell him weapons and cocaine, admitted to keeping those weapons at home, and generally carried a .38-caliber semi-automatic weapon on his person. The complaint also indicated that the informant told O'Neill he had seen defendant put such a gun in his pocket just before the search warrant was issued. As in *Leon*, Officer O'Neill procured an evaluation of his complaint by an assistant State's Attorney on felony review and then presented the complaint to a circuit judge, who issued the search warrant. The warrant speci-

fied that defendant's person and the basement apartment at 3617 West 61st Place should be searched in its execution.

As in *Leon*, the record here does not reflect that the issuing judge was misled by information in Officer O'Neill's affidavit or that when O'Neill presented that affidavit he knew or should have known that information therein was false. Additionally, there is nothing to reflect that the issuing judge intervened in this proceeding in a manner to portray an abandonment of his neutrality. Moreover, the warrant here was not so facially deficient that the executing officers could not reasonably presume it was valid, insofar as the warrant describes the particular person and place to be searched and the items to be seized. See *Leon*, 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421. Finally, as in *Leon*, the supporting affidavit here was not so lacking in probable cause that official belief in the existence of probable cause was unreasonable. As in *Leon*, Officer O'Neill's application for a warrant clearly was supported by much more than a "bare bones" affidavit. *Leon*, 468 U.S. at 926, 82 L. Ed. 2d at 700, 104 S. Ct. at 3422. The affidavit related the results of the surveillance of the defendant and was considered by a circuit court judge (as well as by an assistant State's Attorney on felony review) to evidence probable cause to search the defendant and the basement apartment. Under these circumstances, as in *Leon*, the officers' reliance on the circuit judge's determination of probable cause was objectively reasonable. Thus, there is nothing in this record to indicate that the four factors that must be evaluated under *Leon* to determine "good faith" were not satisfied by the facts of this case.

Defendant contends, however, that the "good faith" doctrine enunciated in *Leon* and in *Krull* has fallen on "hard times" in that the states are reluctant to apply the rule in the face of their own constitutions. In support, defendant cites to the decision of the court in *People v. McGee*, 268 Ill. App. 3d 32, 644 N.E.2d 439 (1994). However, defendant's reliance on that case is misplaced. In *McGee*, the court affirmed the trial court's suppression of the results of a blood-alcohol test taken from blood drawn from the defendant without his consent pursuant to a statute later declared facially unconstitutional. In so holding, the court refused to extend the decision in *Illinois v. Krull*, 480 U.S. 340, 94 L. Ed. 2d 364, 107 S. Ct. 1160 (1987), to the facts before it. The *McGee* court noted that, in *Krull*, the United States Supreme Court expanded the "good faith" exception to the exclusionary rule, such that evidence seized by a police officer in good-faith reliance on a statute that authorized a warrantless administrative search need not be excluded even though the statute was later found to be unconstitutional. In reaching its conclusion

that the evidence was properly suppressed, the *McGee* court stated that "absent a warrant or probable cause and exigent circumstances, we are loathe to apply the *Krull* exception in the face of an intrusion of this magnitude without further direction from our supreme court." *McGee*, 268 Ill. App. 3d at 37, 644 N.E.2d at 443. In the very recent decision of *People v. Krueger*, 175 Ill. 2d 60 (1996), No. 80486, our supreme court agreed with *McGee* that the *Krull* extension of the "good faith" doctrine should not be applied under our state constitution, but specifically refused to repudiate or reject the application of the "good faith" exception as applied in *Leon*. In so doing, the *Krueger* court stated as follows:

> "Before concluding, we note that our decision today does not impact the *Leon* good-faith exception. See *People v. Turnage*, 162 Ill. 2d 299, 306 (1994). Although the converse is not true, one can fully accept the rationale and result in *Leon* while rejecting the rationale and result in *Krull*. This is precisely what Justice O'Connor did in her dissent in *Krull*." *Krueger*, 175 Ill. 2d at 76.

Unlike the facts in *Krueger* and in *McGee*, this case does not involve a situation in which a police officer relied on an unconstitutional statute to effect a warrantless search. Consequently, as already discussed, the instant case does not involve facts that would require an extension of the rule enunciated in *Leon* in order to justify application of the "good faith" exception. Rather, the issues here are precisely those involved in *Leon*, the application of which has not been repudiated or rejected under our constitution. See *People v. Krueger*, 175 Ill. 2d 60 (1996), No. 80486. See also *People v. Turnage*, 162 Ill. 2d 299, 642 N.E.2d 1235 (1994); *People v. Rende*, 253 Ill. App. 3d 881, 624 N.E.2d 922 (1993); *People v. Hirsch*, 221 Ill. App. 3d 772, 582 N.E.2d 1228 (1991). We note that, in the latter two cases, the "good faith" exception as applied in *Leon* has been explicitly implemented and followed.

■ The defendant next contends that the trial court erred in denying him an evidentiary hearing regarding the alleged bad faith of the police officers. Here, too, we disagree. We first note that defendant has waived this contention. An objection must be raised at trial and clearly stated in a post-trial motion to preserve an issue for appeal. *People v. Turner*, 128 Ill. 2d 540, 539 N.E.2d 1196 (1989); *People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124 (1988). A defendant's failure to specifically raise any alleged error in his written motion for a new trial results in waiver of such issue on appeal. *People v. Raso*, 234 Ill. App. 3d 1099, 602 N.E.2d 53 (1992); *People v. Sargent*, 184 Ill. App. 3d 1016, 540 N.E.2d 981 (1989). Here, although defendant raised

an objection before the trial court stating that the denial of an evidentiary hearing constituted error, he did not specifically identify that alleged error in his new trial motion. Rather, with respect to the evidentiary hearing, defendant merely stated that he was entitled to a new trial based on his "objections during the course of the trial." Without more specificity, this post-trial allegation is too general to have alerted the circuit court to any proposed error in its ruling regarding an evidentiary hearing, and, therefore, this issue is waived. See *People v. Nunez*, 24 Ill. App. 3d 163, 320 N.E.2d 462 (1974). See also *Sargent*, 184 Ill. App. 3d 1016, 540 N.E.2d 981.

However, even absent waiver, defendant's contention that he was entitled to present further evidence regarding the alleged bad faith of the police officers is without merit. As noted, defendant sought an evidentiary hearing to substantiate his claim that Officer O'Neill acted in bad faith by failing to terminate his execution of the search warrant when no gun was found on defendant's person. Defendant also sought to establish bad faith in some additional but unarticulated manner by referring to the police officers' prior warrantless searches of the defendant. However, defendant's contention that he is entitled to an evidentiary hearing ignores the fact that, as already noted, the trial court specifically offered him an opportunity to present a written motion with affidavits to justify an evidentiary hearing. However, without explanation either here or before the trial court, defendant never presented any such affidavits, but simply filed a written motion that merely restated the grounds on which he had initially demanded such a hearing. Therefore, defendant has failed to establish that he was denied an evidentiary hearing in the first instance, and has failed to present any alternative basis on which he would be entitled to such a hearing in any event.

As authority for his alleged right to an evidentiary hearing, defendant cites to the decision in *People v. Wells*, 273 Ill. App. 3d 349, 652 N.E.2d 845 (1995). However, that case is wholly inapposite. In *Wells*, the defendant had been prosecuted for a murder committed nearly 30 years earlier. The trial court granted the defendant's motion to suppress evidence seized shortly after the murder because the State could not find a copy of the search warrant pursuant to which the seizure took place. The *Wells* court reversed on the grounds that the State had been denied an evidentiary hearing. For its reasons, the *Wells* court noted that the State had made an offer of proof to the trial court regarding the lost warrant to justify an evidentiary hearing. That offer of proof consisted of a copy of the original complaint for search warrant and promised the testimony of the police officer who prepared that complaint, personally presented it to the judge

who issued the search warrant, and executed that warrant. Unlike *Wells*, here, defendant has not made any such offer of proof beyond the bare, unsworn allegations, set forth above, that the officers exhibited bad faith by continuing the search pursuant to the warrant despite the absence of a gun on defendant's person, and that the officers were biased against the defendant. See *People v. Govin*, 213 Ill. App. 3d 928, 572 N.E.2d 450 (1991) (evidentiary hearing properly denied where defendant failed to make sufficient offer of proof).

■ Defendant lastly contends that the evidence presented was insufficient to support his conviction. We disagree. The law is well settled that, where the sufficiency of evidence is challenged on appeal, a criminal conviction will not be overturned unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt as to the defendant's guilt. *People v. Clemons*, 277 Ill. App. 3d 911, 661 N.E.2d 476 (1996); *People v. Denton*, 264 Ill. App. 3d 793, 637 N.E.2d 1066 (1994). The reviewing court may not retry a defendant when considering a challenge to the sufficiency of the evidence; rather, the trier of fact has the responsibility to resolve questions involving weight of the evidence, credibility of witnesses or resolution of conflicting testimony. *People v. Campbell*, 146 Ill. 2d 363, 586 N.E.2d 1261 (1992); *People v. Jimerson*, 127 Ill. 2d 12, 535 N.E.2d 889 (1989); *People v. Carrasquilla*, 167 Ill. App. 3d 1069, 522 N.E.2d 139 (1988). The relevant question for the reviewing court is whether, after viewing all the evidence in a light most favorable to the prosecution, a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *People v. Robinson*, 167 Ill. 2d 397, 657 N.E.2d 1020 (1995).

The defendant argues that the evidence presented at trial was insufficient to establish the offense of possession of controlled substance with intent to deliver. Ill. Rev. Stat. 1989, ch. 56$^1$/2, par. 1401(a)(2)(A) (now 720 ILCS 570/401(a)(2)(A) (West 1994)). The element of possession under this offense may be established by a showing that the accused knew of the presence of the substance and that the substance was in the immediate and exclusive control of the accused. *People v. Galloway*, 28 Ill. 2d 355, 192 N.E.2d 370 (1963); *People v. Hill*, 169 Ill. App. 3d 901, 524 N.E.2d 604 (1988); *People v. Stamps*, 108 Ill. App. 3d 280, 438 N.E.2d 1282 (1982). Actual physical possession need not be demonstrated to show control in order to sustain a conviction if constructive possession can be inferred from the facts. *Hill*, 169 Ill. App. 3d 901, 524 N.E.2d 604; *Stamps*, 108 Ill. App. 3d 280, 438 N.E.2d 1282. The accused's knowledge and control may be established circumstantially by a showing that he knew of the existence of the narcotics at the place where they were found. *Hill*, 169

Ill. App. 3d 901, 524 N.E.2d 604; *Stamps*, 108 Ill. App. 3d 280, 438 N.E.2d 1282.

On the record before us, we believe that it is not against the manifest weight of the evidence for a trier of fact to have found that defendant possessed the narcotics in question beyond a reasonable doubt. At trial, Officer Cullom testified that defendant admitted that he lived in the basement apartment located at 3617 West 61st Place. Cullom also stated that when they arrived there defendant asked the officers not to damage the front door and then unlocked that door with keys which he had in his possession. Cullom further testified that there were men's clothing inside the apartment which would have fit a man of defendant's size, and that he did not see a bed in the basement office at Alfredo's on the date of the search. This evidence amply supports the inference that the defendant resided at that address. This evidence is also sufficient to override the fact that the driver's license and voter registration of defendant showed his address to be at Alfredo's, particularly in view of Officer Cullom's testimony that he saw no evidence at Alfredo's that defendant or anyone else was residing there.

The defendant would urge that mere suspicious behavior where contraband is present is insufficient to establish possession absent proof that defendant had control over the place where the contraband was discovered. However, in making this argument, defendant ignores the facts discussed above that under the evidence presented by the State, the defendant by his own admission resided in and had control over the apartment where the cocaine was found. As already noted, defendant had keys to the apartment and used them out of an expressed concern that the front door might otherwise be damaged, and that the apartment contained clothing which would have fit defendant's physique.

We next address the sufficiency of the evidence argument with respect to the element of intent to deliver. The law is clear that the quantity of narcotics found can provide a basis from which to infer an intent to deliver. See *People v. Robinson*, 167 Ill. 2d 397, 657 N.E.2d 1020 (1995); *People v. Romero*, 189 Ill. App. 3d 749, 546 N.E.2d 7 (1989) (36.9 grams of cocaine is in excess of that which could be viewed as designed for personal use). The State presented evidence that approximately 50 grams of cocaine was seized from the subject apartment. This amount of cocaine is sufficient by itself to establish an intent to deliver. See *People v. Robinson*, 167 Ill. 2d 397, 657 N.E.2d 1020 (1995) and citations therein. Additionally, the State presented evidence seized at the apartment of a box found next to the 50 grams of cocaine on a closet shelf which contained over $9,000 in

denominations of five, ten, twenty and fifty dollar bills, as well as specially cut plastic bags, a mixer or grinder, and an empty bottle of Inositol. On the basis of this evidence, a rational trier of fact could well have found the presence of the element of intent to deliver beyond a reasonable doubt.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed. As part of this order, we grant the State's motion and assess defendant $150 as costs for this appeal.

Judgment affirmed.

COUSINS, P.J., and McNULTY, J., concur.