JUSTICE LAMPKIN, dissenting: I respectfully dissent. The sworn complaint offered in support of the warrant application to search defendant’s Hillside apartment was sufficient to establish probable cause. Moreover, Detective Viscioni’s reliance on the warrant was reasonable, so the good-faith exception to the exclusionary rule would allow admission of the seized evidence. I do not agree with the majority’s statements concerning the issues before this court and the standard of review. Specifically, the majority asserts the circuit court’s rulings on both the sufficiency of the complaint to justify issuing the search warrant for defendant’s apartment and Detective Viscioni’s good-faith reliance on that search warrant were purely legal rulings and, thus, subject to de novo review. This court’s analysis of a circuit court’s order suppressing seized evidence begins by reviewing the issuing judge’s decision that the complaint was sufficient to justify issuing the search warrant. People v. Bryant, 389 Ill. App. 3d 500, 511, 906 N.E.2d 129 (2009). If the issuing judge’s decision was correct, then the reviewing circuit court judge erred by ruling that the search warrant was issued without probable cause. Bryant, 389 Ill. App. 3d at 511. As a reviewing court, we merely decide whether the issuing judge had a substantial basis for concluding that probable cause existed. McCarty, 223 Ill. 2d at 153. We must view affidavits in a commonsense, rather than a hypertechnical, manner and must not substitute our judgment for that of the issuing judge in construing the affidavit for a search warrant. McCarty, 223 Ill. 2d at 153-54; People v. Thomas, 62 Ill. 2d 375, 380, 342 N.E.2d 383 (1975). Probable cause for a search warrant exists where, given all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. People v. Sutherland, 223 Ill. 2d 187, 219, 860 N.E.2d 178, 204 (2006). Judges asked to issue a search warrant may draw reasonable inferences from the material supplied. Beck, 306 Ill. App. 3d at 179. Furthermore, although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases should be resolved in favor of upholding the search warrant. Beck, 306 Ill. App. 3d at 179. When either an appellate court or a fellow circuit court judge reviews the sufficiency of the evidence presented to the judge who issued the search warrant to determine whether sufficient probable cause was present for him to do so, the standard of review employed is deferential. Bryant, 389 Ill. App. 3d at 513-16. This deferential standard of review comports with the United States Supreme Court’s view that “a grudging or negative attitude by any court reviewing the issuance of a search warrant toward such warrants” is inconsistent with both the desire to encourage the police to use the warrant process before acting and the recognition that the intrusion upon fourth amendment protected interests is less severe once a warrant has been obtained than otherwise might be the case. Bryant, 389 Ill. App. 3d at 516, citing United States v. Ventresca, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746 (1965); see also Massachusetts v. Upton, 466 U.S. 727, 732-33, 80 L. Ed. 2d 721, 727, 104 S. Ct. 2085, 2088 (1984). I disagree with the majority’s conclusion that the sworn complaint for the search warrant of defendant and his Hillside apartment amounted to no more than a “bare-bones” affidavit. The majority has briefly summarized the contents of the complaints for the search warrants presented to the issuing judge. However, because I disagree with the majority concerning the sufficiency of the complaint to support the search warrant for defendant’s Hillside apartment, more details concerning the complaints are necessary. Detective Viscioni sought and received approval from an assistant State’s Attorney before the first and second search warrants were submitted to the issuing judge. The first warrant to search defendant and his car was supported by Detective Viscioni’s seven-page, typed, single-spaced complaint and attached exhibits, which included defendant’s lease for an Oak Park residence and five Hillside police reports, dating from May 2000 to December 2002. In supporting his sworn complaint, Detective Viscioni noted his experience as a police officer for over 14 years, his “opportunity to investigate the sale of illicit drugs,” and his “well over 60 narcotic arrests.” On February 2, 2004, officers from the Hillside, Maywood and Wheaton police departments met concerning informant information and intelligence gathered by the police about the suspects, defendant and Paul Jones. The complaint explained that previously, in August 2001, Jones was arrested at an Oak Park, Illinois, address and 3,270 grams of cocaine, 95 grams of heroin, and 7 firearms were recovered. Defendant was the leaseholder of that Oak Park address. Currently, Jones resided at a Wheaton, Illinois, address, and defendant, once again, was the leaseholder of that Wheaton address. Both addresses were listed in the complaint. Defendant, however, resided at the 2E apartment in Hillside, Illinois, as established by five Hillside police reports from 2000 to 2002, which linked defendant to apartment 2E. For example, according to a report about an incident in January 2002, the victim of an alleged aggravated assault said he exited apartment 2W of the Hillside building while defendant and two children exited the apartment across from the victim. According to the victim, defendant pulled out a gun and threatened to shoot the victim if his dog bit defendant’s children. The victim called the police, and defendant fled. Furthermore, in November 2002, police went to the 2E Hillside apartment in response to a complaint concerning an argument between defendant and Beverly Mims, who identified defendant as her husband. The officers established surveillance of the Hillside and Wheaton addresses beginning February 5, 2004. The investigation revealed that defendant’s driver’s licence was registered to his Hillside address (no apartment number, however, was listed), and he drove a gray Buick Riviera with a license plate registered to him at a Bellwood residence. Furthermore, Jones, in addition to driving a gray Kia, also drove a white Chevrolet Cavalier that was registered to defendant at his Hillside address. Jones’s driver’s license was revoked. On the morning of February 5, 2004, defendant arrived at his Hillside apartment in his Riviera, entered the building, then left 25 minutes later and drove two children to a Hillside elementary school. Defendant returned to the Hillside apartment 25 minutes later carrying a small dark bag. The next morning, defendant left the Hillside apartment and again dropped off two children at school. During the next 30 minutes, defendant and a woman drove to a daycare center, the Hillside post office, a Bellwood currency exchange, and a salon. Then, defendant drove back to the Hillside apartment, dropped off the woman, and went to his Bellwood address, where he stayed for about eight minutes before driving back to his Hillside apartment. On the morning of February 9, 2004, defendant left the Hillside apartment, dropped off a child in Bellwood, stopped at the Hillside post office, then an Elmhurst bank and returned to the Hillside apartment. About one hour later, defendant drove to an alley in Bellwood, where a detective watched a man approach defendant’s car and exchange items with defendant. Defendant then drove back to the Hillside apartment. About 90 minutes later, defendant left the Hillside apartment and drove to 105 Eastern Avenue in Bellwood, where an officer observed a man, later identified as Darrell Cox, approach defendant’s car and give him money in exchange for items. Defendant then drove back to the Hillside apartment. At 4 p.m. on February 12, 2004, defendant drove from the Hillside apartment into Bellwood, but returned to the Hillside apartment 35 minutes later, having made no stops. At 6:25 p.m., he left the Hillside apartment and drove to an alley in Bellwood. An officer observed a man approach defendant’s car and give him money in exchange for items. Defendant returned to the Hillside apartment, and six minutes later Jones arrived, driving the Chevrolet Cavalier. Jones entered the Hillside apartment building, stayed about 10 minutes, and then returned to his car and drove away. When the police stopped his car, Jones fled through some yards but was apprehended and arrested. He was in possession of $1,151 in small denominations. At 3:14 p.m. on February 16, 2004, defendant left the Hillside apartment and again drove to 105 Eastern Avenue in Bellwood. An officer and Detective Viscioni observed Darrell Cox approach defendant’s car and give him money for an item. After defendant drove off, the officer and Detective Viscioni stopped Cox, who claimed he had purchased only a bag of “weed” from defendant. Detective Viscioni, however, recovered three clear bags of cocaine from Cox. Following his arrest, Cox gave a statement explaining that he has been addicted to cocaine for the past 12 years. He knew defendant as a drug dealer and telephoned him at 708-259-8432 at about 2:16 p.m. on February 16 to buy drugs. He had bought drugs, primarily cocaine, from defendant in this manner for the past year and a half. Cox telephoned the number again at 3:04 p.m. to determine if the drugs were on the way. Shortly thereafter, defendant arrived at Cox’s work address, and Cox walked up to the passenger window of defendant’s car and gave him $30 for three bags of rock cocaine. Cox also identified defendant as his drug dealer from a photographic lineup. On February 18, 2004, at about 2 p.m., Detective Viscioni obtained a warrant to search defendant’s person and his Buick Riviera. When defendant left his Hillside apartment at about 6 p.m., police officers stopped his car. Detective Viscioni searched defendant and recovered his driver’s license, which listed the Hillside apartment building as his address; a paper with a list that included the word “dope”; and four business cards. One card listed the same telephone number Cox had called to order cocaine from defendant. Another card listed “Steve,” “708-259-3077,” and writing stating an order number. Furthermore, a police canine alerted to the odor of narcotics in defendant’s car and on money ($352) recovered from him. Detective Viscioni added all the above information to his sworn complaint for the issuance of a second warrant and, about two hours later, obtained the warrant to search defendant and his 2E Hillside apartment. When examining the sufficiency of a complaint for a search warrant, courts assess the totality of the circumstances. Bryant, 389 Ill. App. 3d at 520. To determine probable cause, a sufficient nexus between a criminal offense, the items to be seized, and the place to be searched must be established. McCoy, 135 Ill. App. 3d at 1066. When there is no direct information to establish a nexus, reasonable inferences may be entertained to create the nexus. McCoy, 135 Ill. App. 3d at 1066. Contrary to defendant’s argument on appeal, courts do not always require observance of a drug sale at the residence to support the inference that contraband will be found at the residence. Restrepo, 994 F.2d at 187-89 (the court found probable cause to search a drug dealer’s residence even though the affidavit supporting the warrant did not describe any drug activity at the residence). Here, although each piece of information presented to the issuing judge might not have provided much weight when assessed on an individual basis, the collective weight of the information in the complaint clearly gave rise to a fair probability that contraband or evidence of a crime would be found at defendant’s Hillside apartment. Specifically, the police established a connection between defendant and Jones, who lived at a residence leased by defendant and drove a car registered to defendant. Moreover, when the police arrested Jones after he went inside defendant’s Hillside apartment building for only 10 minutes, Jones was in possession of a suspicious amount of cash and had attempted to flee from the police. Furthermore, the officers watched defendant engage in four suspected drug sales from his car directly after driving from his Hillside apartment. In all those transactions, defendant drove to predesignated locations, whereupon men approached his car and gave him money in exchange for items he dispensed through his car window. Two of the four transactions occurred in alleys. After officers observed Cox engage in two such transactions with defendant, Cox was arrested and three bags of rock cocaine were recovered from him. He gave a statement explaining that he has been addicted to cocaine for several years and knew defendant as a drug dealer. Cox regularly bought cocaine from defendant for over one year by calling a certain telephone number to place an order and then meeting defendant’s car at a designated location. When the officers searched defendant’s car, a police canine alerted to the odor of cocaine in the car and on defendant’s money. The officers also recovered a business card with the same telephone number Cox always used to place his order for narcotics. That business card corroborated Cox’s statement concerning defendant’s modus operandi for selling drugs. The majority discounts the items recovered from the car search and complains that the second warrant to search defendant’s Hillside apartment was based on the same information the officers had relied upon for the first warrant to search defendant’s car. I disagree. After the car search, the officers knew that the odor of cocaine was present in the car. Moreover, the officers now had a business card that corroborated Cox’s statement concerning defendant’s operation for selling drugs. That additional information provided an important link to the suspicious activity the officers had observed emanating from defendant’s Hillside apartment. Specifically, the corroboration of Cox’s statement and defendant’s continuing course of illegal conduct after driving directly from his Hillside apartment led to the reasonable inference that if defendant did not keep the drugs in his car, then he kept the drugs at his Hillside apartment, despite the presence of young children at that residence. Far from a “hare-bones” affidavit, Detective Viscioni’s sworn complaint presented specific descriptions of defendant’s alleged drug sales and details about the times he drove directly from his Hillside apartment to those drug sales. The complaint established that a nexus existed between defendant’s Hillside apartment and the facts indicating that he was engaged in an ongoing course of criminal conduct. Based on the totality of the information provided, the issuing judge here drew reasonable inferences when he found probable cause to search defendant’s Hillside apartment. The sworn complaint was sufficient to warrant a person of reasonable caution to believe that defendant had violated the law and evidence of the violation would be at his Hillside apartment. Even assuming, arguendo, that the question of probable cause here was a close one, Detective Viscioni’s good-faith reliance on the search warrant prevents suppression of the evidence seized from defendant’s Hillside apartment. The purpose of the exclusionary rule is to deter police misconduct, not to punish the errors of judges and magistrates. Leon, 468 U.S. at 916, 82 L. Ed. 2d at 694, 104 S. Ct. at 3417. Penalizing the police for the judge’s error rather than the police officer’s own error does not logically deter a fourth amendment violation. On appeal, we will not disturb a trial court’s ruling on a motion to suppress unless the ruling was manifestly erroneous; we accept a trial court’s factual findings relevant to an officer’s good faith unless the findings are against the manifest weight of the evidence. People v. Walensky, 286 Ill. App. 3d 82, 92, 675 N.E.2d 952, 959 (1996). Whether the good-faith exception applies in the first instance is a purely legal question subject to de novo review. Walensky, 286 Ill. App. 3d at 92. Although the majority seems to collapse the analysis, the United States Supreme Court has consistently held that questions concerning whether a search violated the fourth amendment and whether exclusion is the appropriate sanction for the violation are separate issues. Leon, 468 U.S. at 906, 82 L. Ed. 2d at 688, 104 S. Ct. at 3412. The good-faith exception provides an exception to the exclusionary rule for evidence obtained by an officer acting in good faith and in reliance on a search warrant ultimately found to be unsupported by probable cause where the warrant was obtained from a neutral and detached judge, free from obvious defects other than nondeliberate errors in preparation, and containing no material misrepresentations. 725 ILCS 5/114 — 12(b)(1), (b)(2) (West 2004). This exception does not apply in four situations: (1) where the issuing judge was misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) where the issuing judge wholly abandoned his judicial role; (3) where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid. Beck, 306 Ill. App. 3d at 180. The record here does not reflect that the issuing judge was misled by the information in Detective Viscioni’s sworn complaint or that Detective Viscioni knew or should have known that information contained therein was false. Furthermore, nothing indicates that the issuing judge intervened in this proceeding in a manner to portray an abandonment of his neutrality. Moreover, the warrant was not so facially deficient that the executing officers could not reasonably presume it was valid where the warrant described the particular person and place to be searched and the items to be seized. See Leon, 468 U.S. at 923, 82 L. Ed. 2d at 699, 104 S. Ct. at 3421. Finally, the complaint was not so lacking in probable cause that official belief in the existence of probable cause was unreasonable. As discussed, Detective Viscioni’s sworn complaint for the warrant to search defendant’s Hillside apartment clearly was supported by much more than a hare-bones affidavit. The complaint contained extensive information about defendant’s activities and residences, detailed the results of the surveillance of defendant and Jones, and was deemed by the issuing judge and an assistant State’s Attorney to have established sufficient probable cause to search defendant and his Hillside apartment. At the very least, the complaint presented an arguable showing of probable cause, and Detective Viscioni’s reliance on the issuing judge’s determination of probable cause was objectively reasonable.